COURT OF APPEALS OF VIRGINIA


Present:  Chief Judge Fitzpatrick, Judges Benton and Kelsey
Argued at Richmond, Virginia


ROBERT BRUCE CAIRNS
                                         OPINION BY
v.    Record No. 0146-02-2    CHIEF JUDGE JOHANNA L. FITZPATRICK
                                      APRIL 15, 2003
COMMONWEALTH OF VIRGINIA


          FROM THE CIRCUIT COURT OF CHESTERFIELD COUNTY
                    Michael C. Allen, Judge

          Craig S. Cooley for appellant.

          Stephen R. McCullough, Assistant Attorney
          General (Jerry W. Kilgore, Attorney General,
          on brief), for appellee.


     Robert Bruce Cairns (appellant) was convicted in a bench

trial of three counts of forcible sodomy in violation of Code

§ 18.2-67.1, one count of rape in violation of Code § 18.2-61

and one count of producing sexually explicit material in

violation of Code § 18.2-374.1.  Appellant contends the trial

court erred by: (1) excluding one of the complaining witnesses'

journals pursuant to the rape shield statute; (2) imposing a

harsher sentence on retrial after a successful appeal and

remand; (3) finding the evidence proved the element of

"intimidation";[1] and (4) finding the evidence sufficient to

---

[1] This argument applies only to the convictions relating to
W.  The other victim, N, was 11 at the time of the abuse, and
the Commonwealth did not have to prove the element of force,
threat or intimidation as to N.  See Code § 18.2-67.1(A).

convict him.  For the reasons that follow, we affirm the convictions and the sentences.

## I.  Background

### A.  Factual History

On October 11, 1998 Dewayne Martin (Martin) and two other men entered appellant's home and removed his stepdaughter, daughter and two sons.  Martin took them to a local church because he had information that the two girls, W and N, were being sexually abused.  Martin called police who met with W,[2] age 14, and her sister, N, age 11.  W told the police that appellant, her stepfather, and her mother had been sexually abusing the two children.  W and N stated that on several occasions dating from February 1998, their parents had engaged in "oral sex" with them.  The abuse also included "truth or dare" games, in which appellant dared W and N to perform sexual acts on him, the mother and each other, strip poker and the use of "sexual favors" to avoid or mitigate punishments.  W also stated that appellant had engaged in vaginal intercourse with her in September 1998.

Additionally, the girls claimed that appellant made two videotapes depicting them performing fellatio on him and cunnilingus with each other and with their mother.  Appellant

---

[2] The Commonwealth refers to W as appellant's daughter throughout its brief; however, the evidence proved that she was his stepdaughter.

- 2 -

made them watch the videotapes and later told the girls he had "snowed them all out" after they watched the tapes.  The girls' brother, who was 13 at the time of the abuse, testified that he inadvertently found one of the videos, and saw his "little sister [N] on her knees [performing fellatio on] my dad" before turning off the tape.  W told the police that she kept three journals, one of which contained a detailed account of the abuse.  Police searched the family home pursuant to a warrant and found one journal kept by W but no videotapes.

Police arrested both parents that night.  Appellant admitted to the police that his daughters had been in the room when he and their mother had sex and that W had been in the bed with them on more than one occasion.  Appellant also stated that he dared W and a friend to get in the shower together during a truth or dare game.  Finally, appellant conceded to police that he dared W to have oral sex with her boyfriend and that he and his wife watched while she did so.  He denied any other sexual conduct with the girls.

In May 1999, appellant and the girls' mother were tried jointly in a bench trial.  The trial court originally convicted appellant of four counts of forcible sodomy, one count of rape and one count of producing sexually explicit materials and sentenced him to 25 years, with 15 years suspended on each of the sodomy counts; 50 years, with 30 years suspended on the rape count; and 5 years, all suspended on the producing sexually

explicit material count.[3]  Those convictions were overturned in

Cairns v. Commonwealth, 35 Va. App. 1, 542 S.E.2d 771 (2001),

and the case remanded for a new trial.

### B.  Procedural History

On remand, the trial judge granted appellant's motion to

recuse himself and a different judge was assigned to preside at

the second trial.  Appellant noticed a hearing on the

admissibility of W's journals pursuant to Code § 18.2-67.7, the

rape shield statute.[4]  The Commonwealth filed a motion in limine

to exclude the journals.  The journals documented dozens of

sexual encounters with numerous partners, listed all W's

partners and kept a tally of her sexual activities, beginning in

the summer of 1997 and continuing after appellant's arrest.

After a closed hearing on both motions, the trial court granted

the Commonwealth's motion in limine and precluded appellant from

introducing the journals into evidence.

On the day of trial, appellant, the Commonwealth and the

trial court waived a trial by jury.  Appellant again sought to

introduce W's journals as possible impeachment testimony at

trial.  Appellant contended that the journals, which contain

explicit details of W's sexual activities, served two

---

[3] The original sentence was for a total of 155 years, 60 of
which was to be served.

[4] A second journal, started after appellant's arrest, was
also proffered at the hearing and at trial.

- 4 -

impeachment purposes.  First, they cast doubt on the abuse because there is no mention of the abusive activities in the contemporaneous journal.  Second, they impeach W's statement to the police that she kept a detailed record of the abuse.  The trial court again ruled that the rape shield statute barred admission of the journals.

Appellant also moved to strike the Commonwealth's case, contending that the evidence failed to prove "intimidation." That motion was also denied.  The trial court dismissed one sodomy count; but convicted appellant of three counts of forcible sodomy, one count of rape and one count of producing sexually explicit material.  The trial court sentenced appellant to 30 years on each of the sodomy counts, with 20 years suspended; 50 years on the rape count; and 10 years on the producing sexually explicit material count, with 10 years suspended.  The trial court denied appellant's request to reconsider the term of his sentence because it exceeded the time imposed at his original trial.  Appellant appeals the convictions and the increased sentences.

## II.  Rape Shield Statute

Appellant contends that it was error to exclude W's journals because (1) they were not "conduct" within the meaning of the rape shield statute and (2) they were relevant to attack her specific allegations and contradict her statements to police.  Appellant argues the journals were necessary to impeach

- 5 -

W's testimony and challenge her credibility.[5]  Appellant further

argued the journals were probative on the issue of W's

vulnerability because they showed she "was involving herself in

sexual activities with anybody who came down the pike."  Any use

of the journals for this purpose is clearly barred by the rape

shield statute because it goes only to promiscuity.  However, we

hold that the trial court erred in excluding the journals as

valid impeachment evidence, but find such error to be harmless.

A.  Application of the Rape Shield Statute

The rape shield statute provides, in pertinent part:

> A.  In prosecutions under this article,
> general reputation or opinion evidence of
> the complaining witness's unchaste character
> or prior sexual conduct shall not be
> admitted.  Unless the complaining witness
> voluntarily agrees otherwise, evidence of
> specific instances of his or her prior
> sexual conduct shall be admitted only if it
> is relevant and is:
>
> 1.  Evidence offered to provide an
> alternative explanation for physical
> evidence of the offense charged which is
> introduced by the prosecution, limited to
> evidence designed to explain the presence of
> semen, pregnancy, disease, or physical
> injury to the complaining witness's intimate
> parts; or
>
> 2.  Evidence of sexual conduct between the
> complaining witness and the accused offered
> to support a contention that the alleged

---

[5] Appellant further contends that the Commonwealth opened the door for introducing the journals when it elicited testimony from W about prior sexual abuse by a third party and of oral sex with her boyfriend.  We hold that any use of the journals as evidence on the merits was properly excluded under the rape shield statute.

offense was not accomplished by force, threat or intimidation or through the use of the complaining witness's mental incapacity or physical helplessness, provided that the sexual conduct occurred within a period of time reasonably proximate to the offense charged under the circumstances of this case; or

3. Evidence offered to rebut evidence of the complaining witness's prior sexual conduct introduced by the prosecution.

B. Nothing contained in this section shall prohibit the accused from presenting evidence relevant to show that the complaining witness had a motive to fabricate the charge against the accused. If such evidence relates to the past sexual conduct of the complaining witness with a person other than the accused, it shall not be admitted and may not be referred to at any preliminary hearing or trial unless the party offering same files a written notice generally describing the evidence prior to the introduction of any evidence, or the opening statement of either counsel, whichever first occurs, at the preliminary hearing or trial at which the admission of the evidence may be sought.

Code § 18.2-67.7.

"[T]he General Assembly intended to preclude evidence of general reputation or opinion of the unchaste character of the complaining witness in all circumstances." Winfield v. Commonwealth, 225 Va. 211, 220, 301 S.E.2d 15, 20 (1983); Hoke v. Commonwealth, 237 Va. 303, 309, 377 S.E.2d 595, 599 (1989); Clinebell v. Commonwealth, 235 Va. 319, 322, 368 S.E.2d 263, 264 (1988). "[W]here relevant evidence of the complaining witness's prior sexual conduct does not fit within the specific exceptions

set forth in the statute, it is not admissible." Evans v. Commonwealth, 14 Va. App. 118, 122-23, 415 S.E.2d 851, 854 (1992). However, our rape shield statute "permit[s] the introduction of evidence of specific acts of sexual conduct between the complaining witness and third persons in carefully limited circumstances." Winfield, 225 Va. at 218, 301 S.E.2d at 19. In addition, "the trial judge must admit other relevant, material evidence, not within the enumerated exceptions, when the exclusion of such evidence would deny the defendant the constitutional right to a fair opportunity to present evidence probative of his defense of the charges against him." Neeley v. Commonwealth, 17 Va. App. 349, 358, 437 S.E.2d 721, 726 (1993).

"'Prior sexual conduct' is defined as 'any sexual conduct on the part of the complaining witness which took place before the conclusion of the trial, excluding the conduct involved in the offense alleged under this article.'" Clinebell, 235 Va. at 322, 368 S.E.2d at 264 (quoting Code § 18.2-67.10(5)); see also Currie v. Commonwealth, 10 Va. App. 204, 391 S.E.2d 79 (1990). Nevertheless, "where relevant evidence is not of prior sexual 'conduct,' Code § 18.2-67.7 does not apply." Brown v. Commonwealth, 29 Va. App. 199, 215, 510 S.E.2d 751, 759 (1999) (citing Evans, 14 Va. App. at 122-23, 415 S.E.2d at 854). We have not yet addressed whether a complainant's written journal or diaries cataloguing sexual events qualifies as "prior sexual

conduct," and is thus subject to exclusion under Code § 18.2-67.7.

While this is an issue of first impression for us, in State v. Vonesh, 401 N.W.2d 170, 176-77 (Wis. Ct. App. 1986) (cited with approval in Clinebell, 235 Va. 319, 368 S.E.2d 263), the Wisconsin Court of Appeals considered whether written notes containing sexual references by a rape victim constituted prior sexual conduct and would thus be inadmissible under their existing rape shield statute.[6]  The court concluded that "the act of writing about sexual desires or activities is not itself prior sexual conduct."  Vonesh, 401 N.W.2d at 176-77.[7]

In Clinebell, the Supreme Court recognized that evidence of prior false accusations of sexual assault is proper impeachment and not subject to exclusion.  See Clinebell, 235 Va. at 325, 368 S.E.2d at 266; see also Brown, 29 Va. App. at 215, 510 S.E.2d at 759 (questioning the complaining witness about prior

_____

[6] The Wisconsin statute mirrors our own and makes evidence of prior sexual conduct inadmissible except: (1) evidence of past sexual conduct with the defendant; (2) evidence of specific instances of sexual conduct showing the source or origin of semen, pregnancy or disease, to determine the degree of assault of extent of injury; (3) evidence of complainant's prior untruthful allegations of sexual assault.  See Wis. Stat. § 972.11(2)(b).

[7] The Vonesh court was not presented with the issue of writings that detailed actual sexual conduct because "the state did not make a record on this point."  Vonesh, 401 N.W.2d at 177.  Thus, while instructive, the facts do not mirror those in this case.

testimony in another sexual assault is permissible to show fabrication and impeach the complaining witness).

"'[C]alling for evidence in one's favor is central to the proper functioning of the criminal justice system.  It is designed to ensure that the defendant in a criminal case will not be unduly shackled in his effort to develop his best defense.'"  Clark v. Commonwealth, 31 Va. App. 96, 109, 521 S.E.2d 313, 319 (1999) (quoting Massey v. Commonwealth, 230 Va. 436, 442, 337 S.E.2d 754, 757 (1985)).  Therefore, "no legislation, however salutary its purpose, can be so construed as to deprive a criminal defendant of his Sixth Amendment right to confront and cross-examine his accuser and to call witnesses in his defense."  Winfield, 225 Va. at 218, 301 S.E.2d at 19 (citing Davis v. Alaska, 415 U.S. 308 (1974)); see also Neeley v. Commonwealth, 17 Va. App. 349, 355, 437 S.E.2d 721, 724 (1993).  "At least in the context of prosecutions of sexual offenses, evidentiary constraints must sometimes yield to a defendant's right of cross-examination.  Cross-examination is an absolute right guaranteed to a defendant by the confrontation clause of the Sixth Amendment and is fundamental to the truth-finding process."  Clinebell, 235 Va. at 325, 368 S.E.2d at 266 (internal citations omitted).

In Clinebell, the Supreme Court reversed the appellant's five convictions of sexual misconduct because his daughter's statements were improperly excluded as rape shield evidence.

The statements were not offered to show prior sexual conduct, but rather, "[appellant] seeks to prove for impeachment purposes that his daughter makes false statements concerning sexual behavior.  We conclude that such statements are not 'conduct' within the meaning of Code § 18.2-67.7, and therefore, the section is inapplicable."  Id. at 322, 368 S.E.2d at 264.  Similarly, in Brown, we held that prior similar testimony was not "sexual conduct" under the statute when offered to impeach the complaining witness by suggesting fabrication.  "Brown's counsel sought to question Doe about prior testimony, not her prior conduct.  Furthermore, the testimony sought was not about sexual conduct."  Brown, 29 Va. App. at 216, 510 S.E.2d at 759.  In holding that Doe's prior testimony could have affected her credibility, we reversed Brown's conviction.

The rationale of Clinebell and Brown is equally applicable here.  In her proffered testimony, W acknowledged that the accounts listed in her journals were true and not fantasies.  The journals, however, do not mention any sexual encounter with appellant.  Appellant sought to show that her contemporaneous journal, while cataloguing numerous other sexual encounters, did not mention appellant's sexual contacts with her.  Additionally, appellant argued that the contemporaneous journal did not comport with W's statements to the police that she kept a detailed account of appellant's abuse.  Therefore, the journal was necessary to impeach her trial testimony with her prior

inconsistent statements.  Similarly, the second journal[8] fails to

mention appellant, even though it purports to list all those

with whom W had sexual encounters.[9]  Thus, "[t]he purpose of

introducing the [journals] was to attack [W's] credibility," as

to her specific allegations against appellant.  Clinebell, 235

Va. at 322, 368 S.E.2d at 264.  Appellant sought "to prove for

impeachment purposes" that W's journals are prior statements

inconsistent with her trial testimony and with her statements to

the police.  Id.  Thus, the journals were not offered to prove

the kind of "sexual conduct" prohibited by Code § 18.2-67.7.

Under these circumstances, it was error to exclude the journals

because while not admissible on the merits, they were proper

impeachment.

## B.  Harmless Error

The Commonwealth maintains that any error in excluding the

journals was harmless in this case.  We agree that excluding the

journals for impeachment purposes was harmless.[10]

We must reverse a criminal conviction unless it plainly

appears from the record and the evidence given at the trial that

---

[8] The record is silent as to how the second journal came to
light.  It did not exist when police searched appellant's home.

[9] The journal lists 24 males and females; but does not name
appellant or the mother.

[10] Because we hold that it was not error to exclude the
journals as substantive evidence, we do not address that issue
in this discussion.

the error did not affect the verdict.  An error does not affect the verdict if we can determine, without usurping the jury's fact finding function, that, had the error not occurred, the verdict would have been the same.  Hanson v. Commonwealth, 14 Va. App. 173, 190, 416 S.E.2d 14, 24 (1992) (citing Code § 8.01-678; Lavinder v. Commonwealth, 12 Va. App. 1003, 1005, 407 S.E.2d 910, 911 (1991)).

> A reviewing court must take into account the burden of proof applied at trial when evaluating the impact of an error upon a verdict.  To the extent that the impact of an error on a verdict is affected by the burden of proof, in a criminal case, the reviewing court must consider that the fact finder was required to reach its verdict beyond a reasonable doubt.

Lavinder, 12 Va. App. at 1006, 407 S.E.2d at 911 (internal quotations omitted).  "The effect of an error on a verdict varies widely depending upon the circumstances of the case. Each case must, therefore, be analyzed individually to determine if an error has affected the verdict."  Id. at 1009, 407 S.E.2d at 913 (internal citations and quotations omitted).  "In criminal cases, the requirement of proof beyond a reasonable doubt is a constitutional requirement of due process."  Id. at 1007, 407 S.E.2d at 912.  Thus, the error is harmless only if we can say beyond a reasonable doubt that the error did not affect the verdict.

The trial court, the fact finder in this case, had overwhelming evidence before it to support the convictions.  The testimony of the two child victims was buttressed by appellant's

own admissions about his sexual contacts with them. Appellant admitted to police that he allowed W to be in the bed when he and his wife had sex and that he had watched W perform oral sex on her boyfriend. Such admissions establish a sexual relationship between himself and his stepdaughter. Additionally, the victims' brother corroborated and detailed the offenses when he testified that he viewed a videotape in which his sister engaged in fellatio with appellant.

Furthermore, the trial court explicitly stated on the record, "that though the court sustained the Commonwealth's motion with respect to [the journals], I reviewed that carefully and I'm aware of it" and "had [the journals] been considered as part of the evidence in the case, it wouldn't have caused me to change my mind or to rule any differently."[11] Thus, we can say, beyond a reasonable doubt and without usurping the fact finding function, that the verdict would have been the same had the journals been introduced into evidence. Accordingly, while it was error to exclude the journals, under the facts of this case, we find the error to be harmless.

---

[11] Although the journals were not in evidence at trial, the trial court reviewed them for the pretrial hearing and was aware of their contents.

III.  Vindictiveness on Retrial

Next, appellant contends that it was error for the trial court to impose a harsher sentence at his second trial after his successful appeal.  Appellant asserts that allowing the trial court to impose a greater sentence on remand would have a "chilling effect" on appeals.  Appellant relies on North Carolina v. Pearce, 395 U.S. 711 (1969), for the proposition that a harsher sentence indicates "vindictiveness" on the part of the trial judge because there were no subsequent convictions or bad conduct that would justify the increased sentence.

"[V]indictiveness, manifesting itself in the form of increased sentences upon conviction after retrial, can have no place in the resentencing process."  Chaffin v. Stynchcombe, 412 U.S. 17, 24 (1973).

> Due process of law . . . requires that
> vindictiveness against a defendant for
> having successfully attacked his first
> conviction must play no part in the sentence
> he receives after a new trial.  And since
> the fear of such vindictiveness may
> unconstitutionally deter a defendant's
> exercise of the right to appeal or
> collaterally attack his first conviction,
> due process also requires that a defendant
> be freed of apprehension of such a
> retaliatory motivation on the part of the
> sentencing judge.
>
> In order to assure the absence of such a
> motivation, we have concluded that whenever
> a judge imposes a more severe sentence upon
> a defendant after a new trial, the reasons
> for his doing so must affirmatively appear.
> Those reasons must be based upon objective
> information concerning identifiable conduct

on the part of the defendant occurring after the time of the original sentencing proceeding.  And the factual data upon which the increased sentence is based must be made part of the record, so that the constitutional legitimacy of the increased sentence may be fully reviewed on appeal.

Pearce, 395 U.S. at 725-26.

The presumption outlined in Pearce has since been "restricted . . . to areas where its objectives are thought most efficaciously served.  Accordingly, in each case, we look to the need, under the circumstances, to guard against vindictiveness in the resentencing process."  Texas v. McCullough, 475 U.S. 134, 138 (1986) (internal citations and quotations omitted); see also Alabama v. Smith, 490 U.S. 794, 799 (1989) ("While the Pearce opinion appeared on its face to announce a rule of sweeping dimension, our subsequent cases have made clear that its presumption of vindictiveness does not apply in every case where a convicted defendant receives a higher sentence on retrial."). "Pearce did not turn simply on the fact of conviction, appeal, reversal, reconviction, and a greater sentence."  Colten v. Kentucky, 407 U.S. 104, 116 (1972); see also Smith, 490 U.S. at 799.

"Beyond doubt, vindictiveness of a sentencing judge is the evil the Court sought to prevent rather than simply enlarged sentences after a new trial.  The Pearce requirements thus do not apply in every case where a convicted defendant receives a higher sentence on retrial."  McCullough, 475 U.S. at 138.  For example, "[t]he presumption of Pearce does not apply in

situations where the possibility of vindictiveness is . . . speculative, particularly since the presumption may often operate in the absence of any proof of an improper motive and thus block a legitimate response to criminal conduct." Id. at 139. "The presumption is also inapplicable [where] different sentencers assessed the varying sentences" imposed. Id. at 140. This is true because the judge imposing the second sentence has "no personal stake in the prior conviction and no motivation to engage in self-vindication." Chaffin, 412 U.S. at 27. Thus, in cases "[w]here there is no . . . reasonable likelihood [of vindictiveness], the burden remains upon the defendant to prove actual vindictiveness." Smith, 490 U.S. at 799.

No Virginia case has yet addressed the question of applying the Pearce presumption to situations where different sentencing judges are involved. Nevertheless, the Supreme Court has made clear that the Pearce presumption does not apply in cases where the jury has imposed sentence. See Chaffin, 412 U.S. 17. The fact that appellant elected to have a new trial judge hear the evidence and impose sentence should not put appellant in a better position than he would have been had he exercised his right to a jury trial. Moreover, the weight of authority is that "no presumption of vindictiveness is present when the second sentence was delivered by a different judge and the record indicates nonvindictive reasons supporting the harsher sentence." Macomber v. Hannigan, 15 F.3d 155, 156 (10th Cir.

1994). See also United States v. Newman, 6 F.3d 623, 630 (9th Cir. 1993) ("when second sentencing judge provides an on the record, wholly logical, non-vindictive reason for the sentence, the requirements of Pearce are met, particularly since trial judges must be accorded broad discretion in sentencing" (internal citations and quotations omitted)); United States v. Cheek, 3 F.3d 1057, 1064 (7th Cir. 1993) ("the presumption of vindictiveness is not present when a different judge imposes the second sentence"); Rock v. Zimmerman, 959 F.2d 1237, 1257 (3d Cir. 1992) ("the Pearce presumption does not apply where the second sentence is imposed by a different sentencer and the record provides affirmative assurance that the harsher sentence reflects simply a fresh look at the facts and an independent exercise of discretion"); United States v. Perez, 904 F.2d 142, 146 (2d Cir. 1990) (Pearce presumption does not apply in situations where the possibility of vindictiveness is speculative); State v. Faria, 758 A.2d 348 (Conn. 2000) (no presumption of vindictiveness when second sentence imposed by a different judge); State v. Robbins, 850 P.2d 176 (Idaho 1993) (no reasonable likelihood of vindictiveness where different judge imposes sentence); State v. Macomber, 769 P.2d 621 (Kan. 1989) ("no presumption of vindictiveness arises where original judge does not pronounce sentence after the second conviction"); Bush v. State, 667 So. 2d 26 (Miss. 1996) (no presumption of vindictiveness where there are two different sentencers); New

- 18 -

Hampshire v. Hurlburt, 603 A.2d 493, 496 (N.H. 1991) ("We decline to find that there exists a 'reasonable likelihood' that a sentencing judge who was not involved in the first trial would increase the sentence for the sake of vindicating a fellow judge."); Graham v. State, 681 So. 2d 1178 (Fla. Dist. Ct. App. 1996) (no presumption of vindictiveness where second sentence not imposed by same judge who imposed original sentence); State v. Starr, 998 S.W.2d 61, 70 (Mo. Ct. App. 1999) ("when a second, different judge imposes a harsher sentence, we do not see the necessity in applying a prophylactic rule because there is little reason for the second judge to be vindictive since he or she did not preside at the first trial"); Davila v. State, 871 S.W.2d 806 (Tex. App. 1994) (fact that different judge tried case on remand sufficient to overcome presumption of vindictiveness).  We adopt the majority view and hold that there is no presumption of vindictiveness when a different judge imposes the sentence and the record shows a nonvindictive reason for the sentence.[12]

_____

[12] Johnson v. Commonwealth, 212 Va. 579, 186 S.E.2d 53 (1972), upon which appellant relies, does not compel a different result.  While the Johnson Court recognized the Pearce presumption of vindictiveness, it held that the presumption did not apply in de novo appeals to the circuit court.  See id. This is the same rule the United States Supreme Court adopted in Colten.  See 407 U.S. 104.

In the instant case, a different trial judge heard the evidence on remand and imposed the new sentence. Accordingly the *Pearce* presumption does not apply. The trial court was unaware of the parameters of the original sentence. "The first prerequisite for the imposition of a retaliatory penalty is knowledge of the prior sentence." *Chaffin*, 412 U.S. at 26. When appellant raised the issue of vindictiveness, the trial court stated, "I knew generally, not the specific number of years, but I had a general idea of the range of punishment that had been previously imposed but did not know the specific counts." This statement is borne out by the colloquy between the trial court and defense counsel regarding the disparity between the original sentences and that imposed by the trial court. Because the trial court was unaware of the specifics of the original sentence and had no personal stake in the outcome, no vindictiveness has been shown.[13]

The record further demonstrates that the sentence before us reflects "a fresh look at the facts and an independent exercise of discretion." *Rock*, 959 F.2d at 1257. Indeed, the trial court dismissed one count of forcible sodomy for which appellant

---

[13] Additionally, the sentence on remand totaled fewer years. The original sentence imposed 155 years, with 60 years to serve. The sentence on retrial was 150 years, with 80 years to serve. The difference results from the trial court's decision not to suspend any of the time on the rape conviction (both judges sentenced appellant to 50 years; but the first judge suspended 30 years of the original sentence).

was originally convicted because it found insufficient evidence to support that charge. This demonstrates that the trial court considered only the evidence before it without reference to the prior trial or convictions. As the trial court observed, "I obviously did not hear the evidence when the case was before Judge Shelton."

Lastly, appellant voluntarily waived his right to be tried by a jury and elected to have the trial court determine his guilt or innocence and impose sentence if he was convicted. As the Supreme Court noted in McCullough, "[t]here can hardly be more emphatic affirmation of [appellant's] appraisal of [the trial court's] fairness than this choice." 475 U. S. at 139. Appellant also agreed that there was no need for a new presentence report; although updated victim impact statements were submitted to the trial court. Under these circumstances, "there was no realistic motive for vindictive sentencing" and, therefore, the Pearce presumption is inapplicable. Id.; see also Perez, 904 F.2d 142 (same). Rather than having any vindictive motive, "the sentence was arrived at after consideration of the evidence." Specifically, "the Court is persuaded that Mr. Cairns is a sexual predator against whom society's only remedy is to segregate him from the community."

Finally, the trial court stated "an on-the-record, wholly logical, nonvindictive reason for the sentence" it imposed. McCullough, 475 U.S. at 140. The record reveals that the trial

- 21 -

court "focused on the gravity of the offense and the objectives of criminal sentencing" in imposing the second sentence. Robbins, 850 P.2d at 180. The trial court explained the sentence to appellant.

> Your conduct demonstrates an unthinkable depravity of mind, a willingness to harm others in order to satisfy some twisted personal gratification, and that involves your own children and is a violation of the ultimate trust they place in you, and that makes it even more horrific.
>
> It's the court's duty in such a circumstance to impose appropriate punishment, and to protect the community, to the extent we can, from repetition of such behavior. The only tool available to the court in this circumstance I think is to segregate you from society, and I think the aggravated nature of these acts compels [the sentence imposed].

This explanation does not bespeak a vindictive motive. Rather, it demonstrates a focus on the offenses and an exercise of sentencing discretion permitted to a sentencing judge, even on retrial. See Wasman v. United States, 468 U.S. 559, 563 (1984) ("a judge . . . is to be accorded very wide discretion in determining an appropriate sentence"). We hold the trial court did not err in imposing its sentence.

IV. Failure to Prove Force, Threat or Intimidation

Appellant next contends that the Commonwealth failed to prove the requisite element of force, threat or intimidation in the sodomy and rape counts of W. We disagree.

"The judgment of a trial court sitting without a jury is entitled to the same weight as a jury verdict and will not be set aside unless it appears from the evidence that the judgment is plainly wrong or without evidence to support it." Reynolds v. Commonwealth, 30 Va. App. 153, 163, 515 S.E.2d 808, 813 (1999).

> An accused shall be guilty of forcible sodomy if he or she engages in cunnilingus, fellatio, anallingus, or anal intercourse with a complaining witness who is not his or her spouse, or causes a complaining witness, whether or not his or her spouse, to engage in such acts with any other person, and . . . [t]he act is accomplished against the will of the complaining witness, by force, threat or intimidation of or against the complaining witness.

Code § 18.2-67.1(A).

> Intimidation requires putting a victim in fear of bodily harm by exercising such domination and control of her as to overcome her mind and overbear her will. Intimidation may be caused by the imposition of psychological pressure on one who, under the circumstances, is vulnerable and susceptible to such pressure. This fear of bodily harm must derive from some conduct or statement of the accused.

Sabol v. Commonwealth, 37 Va. App. 9, 18, 553 S.E.2d 533, 537 (2001) (internal citations and quotations omitted); see also Sutton v. Commonwealth, 228 Va. 654, 324 S.E.2d 665 (1985). Nevertheless "proof that the victim feared some type of bodily harm other than the harm inherent in the sexual assault" is not required. Commonwealth v. Bower, 264 Va. 41, 46, 563 S.E.2d

736, 738 (2002).  Instead "[m]atters such as the victim's age, the relative size of the defendant and victim, the familial relationship between the defendant and victim, . . . are relevant matters to be considered with other testimony when determining whether the victim was put in fear of bodily harm." Id.  "It defies human experience to conclude that fear of the possibility of bodily injury caused by sexual assault is insufficient 'fear of bodily harm' for purposes of establishing sexual assault by intimidation."  Bower, 264 Va. at 45, 563 S.E.2d at 738.

When questioned on cross-examination about a lack of physical abuse or threat, W stated that appellant "was physically abusing me the whole time."  She told appellant "I don't want to do this" but that "fighting [appellant] didn't really seem like an option. . . .  I knew he was more powerful than me . . . if he was mad, I was afraid."  As in Bower, the familial relationship between appellant and W is an important consideration.  Appellant was the stepfather and father of the victims.  However, unlike the victim in Bower, W could not rely on her mother for protection because she was a participant in the abuse.[14]

---

[14] W had earlier been sexually abused by an uncle.  When she reported the uncle's abuse, she and her siblings were placed in foster care.  W did not report appellant's abuse because she "didn't want all of us to go back in the foster home."

Furthermore, the trial court could properly consider the violent atmosphere appellant created in the home in its determination that W was "intimidated" into submitting to the abuse. W stated that appellant had a violent temper and she was afraid of him. While he was not physically abusive to her, W saw appellant punch her brother. The brother stated that, in W and N's presence, appellant "picked [him] up by the throat . . . and threw [him] against the wall." Appellant had frequent angry outbursts that resulted in overturned furniture. W also saw appellant "grab" her mother and threaten her. Credible evidence supports the trial court's finding that the Commonwealth proved intimidation beyond a reasonable doubt.

## V. Sufficiency of the Evidence

Lastly, appellant argues that the evidence was insufficient to support his convictions. Appellant argues that there was no physical or medical evidence to support the girls' allegations and that the Commonwealth's case was conjectural at best. We disagree.

"When reviewing the sufficiency of the evidence after a conviction, we consider that evidence in the light most favorable to the Commonwealth, and we affirm the conviction unless it is plainly wrong or without evidence to support it." Shackleford v. Commonwealth, 262 Va. 196, 209, 547 S.E.2d 899, 906 (2001). "The credibility of the witnesses and the weight accorded the evidence are matters solely for the fact finder who

- 25 -

has the opportunity to see and hear that evidence as it is presented." Sandoval v. Commonwealth, 20 Va. App. 133, 138, 455 S.E.2d 730, 732 (1995). Given the evidence adduced at trial, the trial court could reasonably find that appellant engaged in a pattern of sexual abuse of W and N beginning in February 1998 and continuing until Martin removed them from the home in October 1998.

The evidence showed that W and appellant engaged in "oral sex" in April and May of 1998 while her mother was at work. During a "strip poker" game, W ran out of clothes and had to do "favors" for appellant, which included "put[ting] [appellant's] penis in [her] mouth" and appellant "put[ting] his penis in [W's] vagina." In the summer of 1998, W and N made videos at appellant's direction. These were termed a type of punishment and "my dad told us to get off our restriction, we had to make a movie for him." The videos detailed various instances of sexual abuse and at least one was seen by the victims' 13-year-old brother. Although police did not find any videotapes with these encounters, appellant stated to the girls that he "snowed them out" after he watched them. The trial court believed the Commonwealth's evidence and disbelieved appellant's denials. Credible evidence supported the trial court's finding. Accordingly, the judgment of the trial court is affirmed.

Affirmed.

Benton, J., concurring, in part, and dissenting, in part.

                                    I.

I concur in Part I and Part II(A) of the opinion and in the holding that the trial judge erred by excluding two journals in which the older girl chronicled her sexual activities. This evidence was probative of Cairns's claim "that the complaining witness had a motive to fabricate the charges," Code      § 18.2-67.7, and was relevant as tending to prove for impeachment purposes the claim of fabrication. I disagree, however, with the conclusion that the error in excluding the evidence was harmless and, therefore, I dissent from Part II(B).

The Supreme Court of Virginia has "adopt[ed] the Kotteakos [v. United States, 328 U.S. 750 (1946),] harmless-error test" for measuring error under Code § 8.01-678. Clay v. Commonwealth, 262 Va. 253, 260, 546 S.E.2d 728, 732 (2001). Applying that test, the United States Supreme Court recently held that "the principle of Kotteakos [means] that when an error's natural effect is to prejudice substantial rights and the court is in grave doubt about the harmlessness of that error, the error must be treated as if it had a 'substantial and injurious effect' on the verdict." O'Neal v. McAninch, 513 U.S. 432, 444 (1995) (citing Kotteakos, 328 U.S. at 764-65, 776). Moreover, when a trial error has been shown on direct appeal from a conviction, the government bears the burden of proving harmlessness under this standard. See O'Neal, 513 U.S. at 437. Indeed, the Supreme Court of Virginia has held that "error will be presumed to be prejudicial unless it plainly appears that it could not have affected the result." Caldwell v. Commonwealth, 221 Va. 291,

- 27 -

296, 269 S.E.2d 811, 814 (1980).

Although I disagree with the majority opinion's characterization that "overwhelming evidence . . . support[s] the convictions," I believe it is important to note, as the United States Supreme Court has observed, that an "emphasis and perhaps overemphasis, upon the [concept] of 'overwhelming evidence,'" has the effect of clouding the relevant question "'whether there is a reasonable possibility that the evidence complained of might have contributed to the conviction.'" Chapman v. California, 386 U.S. 18, 23 (1967) (footnote and citations omitted). Indeed, the principle is well established that a harmless error analysis is entirely distinct from a sufficiency of the evidence analysis. "The inquiry cannot be merely whether there was enough to support the result, apart from the phase affected by the error. It is rather, even so, whether the error itself had substantial influence. If so, or if one is left in grave doubt, the conviction cannot stand." Kotteakos, 328 U.S. at 765. Consistent with these principles, the Supreme Court of Virginia has held that even if "the other evidence amply supports the . . . verdicts, [error is not harmless when] the disputed [evidence] may well have affected the . . . decision." Cartera v. Commonwealth, 219 Va. 516, 519, 248 S.E.2d 784, 786 (1978). See also Hooker v. Commonwealth, 14 Va. App. 454, 458, 418 S.E.2d 343, 345 (1992) (holding that "a harmless error analysis . . . [is not] simply a sufficiency of the evidence analysis").

The record contains statements Cairns made during his voluntary interview with the police before they arrested him. At all times Cairns denied he engaged in sexual contact with his

stepdaughter and his daughter.  Although Cairns admitted playing poker with the girls, he denied playing strip poker with them. He told the police that both girls were angry with him because he "grounded" them after he "got up in the middle of the night, and [found] seven guys . . . in their room."  He explained that the girls were still angry because he removed their privileges for "a long, extended" period; he "grounded [one] 'till Halloween and this has been in effect since last month," and he "grounded [the other one] 'till the end of the year . . . [so that she] can't go out the house and she can't have no friends over."

Cairns did not tell the police that he and his wife intentionally exposed his daughters to their marital sexual activity.

> [Detective]:  Has your daughters ever been in the room when you and your wife have had sex?
>
> [Cairns]:  Probably so.
>
> [Detective]:  Okay.
>
> [Cairns]:  I mean, they fall asleep in the room, and we go in the other room, but still, they're. . . .
>
> [Detective]:  Okay.  Was there a night when [the older girl] was . . . was in your bed when you and your wife had sex?  I mean, she could have just been layin' there.
>
> [Cairns]:  I don't know.  Truthfully, I don't know.
>
>     *     *     *     *     *     *     *
>
> [Detective]:  Um, you and your wife have sex?
>
> [Cairns]:  Um, do we?

> [Detective]:  No, with [the older girl] in there.
>
> [Cairns]:  I ain't sayin' it might not have ever happened.
>
> [Detective]:  Right.
>
> [Cairns]:  I'm sayin' the best what I can remember, I'm not sure, so I won't answer.

Cairns did admit, however, that he and his wife were in the room when the older girl "performed oral sex on her boyfriend," but he explained this is a lapse in judgment that occurred because he and his wife were intoxicated.  Although Cairns's conduct in this instance was despicable, it was not one of the offenses charged and it pales in comparison to the charges in the indictments.

Cairns claimed that the girls had a motive to fabricate their accusations and that he needed to introduce the journals to establish (1) the older girl was having sexual relations with a substantial number of people during the period at issue, (2) she explicitly described those sexual encounters and did not name Cairns in the journal as one of those sexual partners, (3) she was untruthful when she told a detective the journal would confirm her allegation, and (4) she had a cause to be angry and to fabricate her accusation after Cairns discovered five or six young men secretly visiting her bedroom late at night.

The evidence clearly proved Cairns and his wife acted inappropriately in the presence of their children and may have contributed to the older girl's sexually inappropriate conduct. The evidence that he committed the charged offenses, however, was based solely on the testimony of the children and was unconfirmed

by any other evidence. Significantly, the girls did not dispute that Cairns "grounded" them because five or six boys were in the girls' bedroom at night when all the family had retired to their beds for the night. Moreover, the journals tend to establish the truth of Cairns's claim that the girls entertained boys in the bedroom late at night and to provide a basis upon which a trier of fact might tend to credit Cairns's claim of a retaliatory motive by the girls.

The journals establish that by the time the older girl had reached the age of fourteen, she had engaged in various sex acts, including fellatio, cunnilingus, and sexual intercourse, on ninety-six different occasions with twenty-four partners, both male and female. Those journals mention her parents but do not identify them as engaging in any sexual activity with her. Indeed, one entry records the older girl's fear that her father would awaken in the night and discover her having sexual intercourse in her bedroom with a boy. The admission of the evidence could have had its intended effect of impeaching the testimony of the older girl and proving her complaint to be a fabrication. Thus, the evidence went to the heart of Cairns's defense and its exclusion prejudiced his right to cross-examine witnesses and to prove evidence in his defense. We cannot say its exclusion played no significant part in the verdict.

"'[A] fair trial on the merits and substantial justice' are not achieved if an error at trial has affected the verdict." Lavinder v. Commonwealth, 12 Va. App. 1003, 1005, 407 S.E.2d 910, 911 (1991) (quoting Code § 8.01-678). Thus, we have held that "in determining if an error is harmless, a reviewing court . . .

determines . . . whether as a matter of law, this decision of the fact finder was affected by the error."  Id. at 1006, 407 S.E.2d at 911.  I believe this record proves as a matter of law that the judge's decision was affected by the error.

Furthermore, I disagree that the trial judge ruled, as a matter of fact, that the guilty verdict would have been the same if the excluded evidence had been admitted.  At the sentencing hearing, when the issue before the judge was the appropriate sentence to impose, Cairns's attorney argued that the evidence did not prove aggravating circumstances of force and that the journals indicated in mitigation that the older girl "has had significant sexual contact."  In that context and in response to this argument, the trial judge reminded Cairns's attorney that the journals had been ruled inadmissible and "that had it been considered as part of the evidence in the case, it wouldn't have caused me to change my mind or rule any differently."  Because this discussion concerned the issue of sentencing, Cairns's attorney reminded the judge that "the court has received victim impact statements which address exactly that."  In short, the judge's comment, which was made at sentencing and in response to the argument that the older girl's conduct was a mitigating factor, should not be construed to suggest that the trial judge was commenting upon the impact the excluded evidence potentially might have had at the guilt phase of the trial.  Viewed in the context of the discussion about sentencing factors, the judge was not suggesting that the guilt verdict would have been the same if the improperly excluded evidence had been admitted at the guilt phase and had had its proffered effect.

The exclusion of the journals affects a substantial credibility determination and belies the majority's determination that the exclusion was harmless. A trier of fact might normally be inclined to disbelieve a fourteen-year-old child would have an independent basis to be familiar with fellatio, cunnilingus, and sexual intercourse as described in her testimony and, as a consequence, to disbelieve she could have fabricated the detailed sexual activities she says her parents committed upon her. Moreover, it is not unreasonable to believe that a trier of fact, after learning of the child's ninety-four episodes of prior sexual contact with twenty-four different partners, might have concluded as a matter of fact that the girl's own conduct tended to render her less susceptible to intimidation. The erroneous exclusion of this evidence also substantially negated Cairns's ability to prove his claim of fabrication. Thus, the exclusion raises a grave concern that the probative value the trier of fact gave the Commonwealth's evidence would have been qualitatively diminished if the journals had been admitted. This error was not insignificant; it had a "substantial and injurious effect" on the trier of fact's credibility determination and verdict.

While other evidence amply supports the verdicts, "[o]ther evidence of a disputed fact, standing alone, does not establish that an error is harmless." Hooker, 14 Va. App. at 458, 418 S.E.2d at 345. I would hold, as a matter of law, the disputed evidence affected the trier of fact's credibility decisions and, thus, the verdicts. Accordingly, I conclude that the error in

excluding evidence was prejudicial to Cairns and not harmless.[15]

## II.

I also dissent from Part III of the opinion.

The United States Supreme Court announced a prophylactic rule in North Carolina v. Pearce, 395 U.S. 711 (1969), that "placed a limitation on the power of a sentencing authority to increase a sentence after reconviction following a new trial." Texas v. McCullough, 475 U.S. 134, 137 (1986). The Court held as follows:

> Due process of law . . . requires that vindictiveness against a defendant for having successfully attacked his first conviction must play no part in the sentence he receives after a new trial. And since the fear of such vindictiveness may unconstitutionally deter a defendant's exercise of the right to appeal or collaterally attack his first conviction, due process also requires that a defendant be freed of apprehension of such a retaliatory motivation on the part of the sentencing judge.
>
> In order to assure the absence of such a motivation, we have concluded that whenever a judge imposes a more severe

___

[15] The exclusion of this evidence also could be said to violate Cairns's right to confront a witness against him as protected by the Confrontation Clause of the Sixth Amendment. "[A] major reason underlying the constitutional confrontation rule is to give a defendant charged with crime an opportunity to cross-examine the witnesses against him." Pointer v. Texas, 380 U.S. 400, 406-07 (1965). As the United States Supreme Court has noted, a trial error may "rise to the level of a constitutional violation . . . if it results in a prejudice so great as to deny a defendant his Fifth Amendment right to a fair trial." United States v. Lane, 474 U.S. 438, 446 n.8 (1986). Because, in my view, the Commonwealth cannot even establish the lower standard of harmless error under the Kotteakos analysis, I do not address the more onerous standard required by Chapman for constitutional error.

> sentence upon a defendant after a new trial, the reasons for his doing so must affirmatively appear. Those reasons must be based upon objective information concerning identifiable conduct on the part of the defendant occurring after the time of the original sentencing proceeding. And the factual data upon which the increased sentence is based must be made part of the record, so that the constitutional legitimacy of the increased sentence may be fully reviewed on appeal.

Pearce, 395 U.S. at 725-26 (emphasis added).

This ruling clearly denotes that the Pearce presumption "operate[s] in the absence of any proof of improper motive." United States v. Goodwin, 457 U.S. 368, 373 (1982). Moreover, the Supreme Court has ruled that "the reach of Pearce is best captured by [its] statement in United States v. Goodwin, 457 U.S., at 374 . . . [that,] '[i]n sum, the Court [in Pearce] applied a presumption of vindictiveness, which may be overcome only by objective information . . . justifying the increased sentence.'" McCullough, 475 U.S. at 142.

The Supreme Court has not overruled Pearce. In McCullough, the Supreme Court explained that "[t]he facts of this case provide no basis for a presumption of vindictiveness." 475 U.S. at 138. There, the retrial occurred because the trial judge who presided at the initial jury trial "granted McCullough's motion for a new trial on the basis of prosecutorial misconduct." 475 U.S. at 136. In imposing a higher sentence on retrial than the twenty years fixed by the jury at the first trial, the judge "found that . . . she relied on new evidence about the murder that was not presented at the first trial and hence never made known to the sentencing jury [at the first trial]." Id. In

addition, the judge "explained that she learned for the first time on retrial McCullough had been released from prison only four months before the later crime had been committed." Id. In view of this record, the Supreme Court reasoned as follows:

> In contrast to Pearce, McCullough's second trial came about because the trial judge herself concluded that the prosecutor's misconduct required it. Granting McCullough's motion for a new trial hardly suggests any vindictiveness on the part of the judge towards him. "[U]nlike the judge who has been reversed," the trial judge here had "no motivation to engage in self-vindication." In such circumstances, there is also no justifiable concern about "institutional interests that might occasion higher sentences by a judge desirous of discouraging what he regards as meritless appeals." In granting McCullough's new trial motion, [the trial judge] went on record as agreeing that his "claims" had merit. Presuming vindictiveness on this basis alone would be tantamount to presuming that a judge will be vindictive towards a defendant merely because he seeks an acquittal.

Id. at 138-39 (citations omitted). In short, based on the record in McCullough, the Supreme Court held that "not even 'apprehension of . . . a retaliatory motivation on the part of the sentencing judge' could be present." 475 U.S. at 139 (citation omitted).

Significantly, the Court also ruled that "the second sentencer provide[d] an on-the-record, wholly logical, nonvindictive reason for the sentence." Id. at 140. Indeed, the resentencing judge "made findings of fact as to why the sentence was longer . . . [and] found that . . . she relied on new evidence . . . that was not presented at the first trial." 475

- 36 -

U.S. at 136.  Noting these circumstances, the Supreme Court "read Pearce to require no more."  Id. at 140.  The Court held "that the careful explanation by the trial judge for the sentence imposed [in McCullough] fits well within [its] prior holdings." Id. at 143.

The Supreme Court, thus, has indicated in McCullough and its other decisions since Pearce that, "in each case, we [must] look to the need, under the circumstances, to 'guard against vindictiveness in the resentencing process.'"  McCullough, 475 U.S. at 138 (citation omitted).  For example, the Court has analyzed the circumstances and the need to guard against vindictiveness when a jury resentences following a new trial. See Chaffin v. Stynchcombe, 412 U.S. 17 (1973).  There, the Court pointed to at least two circumstances that do not exist when a jury sentences.  First, the jury typically is unaware of the prior sentence, which is the "first prerequisite for the imposition of a retaliatory penalty."  Id. at 26.  Second, the jury "is unlikely to be sensitive to the institutional interests that might occasion higher sentences by a judge desirous of discouraging . . . meritless appeals."  Id. at 27.

I believe Cairns's case is one that presents circumstances "where [the Pearce] 'objectives are . . . most efficaciously served.'"  McCullough, 475 U.S. at 138.  The sentence was dramatically increased by the trial judge following the second trial.  Although the sentencing judge noted that he was basing his sentence on Cairns's egregious conduct, the record indicates the evidence at the second trial was not substantially different than the evidence at the first trial.  Moreover, the trial judge

acknowledged that the sentence he imposed was not based on new information concerning conduct after the first trial. Thus, this case is dramatically different than McCullough, where "the secord sentencer provide[d] an on-the-record, wholly logical nonvindictive reason for the sentence." 475 U.S. at 140. See also Macomber v. Hannigan, 15 F.3d 155, 156 (10th Cir. 1994) (noting that several federal "circuits have determined that no presumption of vindictiveness is present when the second sentence was delivered by a different judge and the record indicates nonvindictive reasons supporting the harsher sentence").

The record indicates that, when the trial judge sentenced Cairns, he "arrived at the sentences based on what [he] thought was the appropriate disposition in each of those cases." The judge, however, was aware of the previous reversal and had some knowledge of the prior sentence. He "knew generally, not the specific number of years, but . . . had a general idea of the range of punishment imposed but did not know the specific counts." Indeed, the record reflects that the sentences contain some stark similarities. Both judges imposed a fifty-year sentence for the rape conviction, which has a statutory maximum of life imprisonment. Code § 18.2-61. Unlike the first judge, who suspended thirty years of the rape sentence, the resentencing judge suspended none. Both judges imposed an active sentence of ten years on each of the sodomy convictions, which also has a statutory maximum of life imprisonment for each conviction. Code § 18.2-67.1. Based on different sentences, both judges imposed no active sentence for the pornography offense, which has a statutory maximum of ten years imprisonment. The two sentences

appear to reflect a similar methodology.  The increase in the sentence on retrial, however, is unexplained.

It bears repeating, as the Court explained in <u>Pearce</u>, that the due process concern requires the "defendant be freed of apprehension of . . . a retaliatory motivation" by an affirmative showing on the record of objective information to explain the increased sentence.  395 U.S. at 726.  In this case, the institutional interests that might intrude on a judge's resentencing after a successful appeal remain unnegated and the due process concern expressed in <u>Pearce</u> is unsatisfied.  Therefore, I would hold that the <u>Pearce</u> presumption applies in this case and that the record does not rebut it.  The record contains no "objective information" to justify the increased sentence "beyond the naked power to impose it."  395 U.S. at 726.

For these reasons, I would reverse the convictions and remand for a new trial.