UNPUBLISHED

COURT OF APPEALS OF VIRGINIA

Present:   Judges Chafin, Malveaux and Senior Judge Frank
Argued at Norfolk, Virginia


JUSTIN LEE LUNCEFORD

MEMORANDUM OPINION[*] BY
v.        Record No. 1234-15-1          JUDGE MARY BENNETT MALVEAUX
                                        OCTOBER 25, 2016
COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF THE CITY OF CHESAPEAKE
Frederick B. Lowe, Judge

Terence P. Martin, Senior Assistant Public Defender, for appellant.

Stephen L. Forster, Assistant Attorney General (Mark R. Herring,
Attorney General; Kathleen B. Martin, Senior Assistant Attorney
General, on brief), for appellee.


Justin L. Lunceford ("appellant") was convicted of abduction in violation of Code

§ 18.2-47(A). On appeal, he contends that the evidence was insufficient to prove that he detained

the victim during an argument by means of intimidation. Because the record does not support a

reasonable inference that the victim's fear of bodily harm overrode her ability to leave, we reverse

his conviction.

I.  BACKGROUND

At the time of the incident, appellant had been in a sixteen-year relationship with the

victim, Brandi Jankosky. During their relationship, Jankosky depended on appellant financially.

He is also the father of Jankosky's son, and they frequently argued when they met to exchange

custody of the child. Typically, the two exchanged custody of the child in public to limit the

possibility of such altercations. During one such exchange on March 15, 2014, appellant took

---

[*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

their son to meet Jankosky in a Wal-Mart parking lot. After placing the child in the back of Jankosky's vehicle, appellant climbed into the front passenger seat beside her. Although Jankosky asked him to leave several times, appellant instead pressured her for more than an hour into having sex at some point in the future. When she tried to get out of the car, appellant stopped her by telling her not to make a scene.

Their argument was contentious. At times, the tension between Jankosky and appellant upset their son, who began to cry. This frustrated appellant, who threatened to spank the child if he did not stop crying.

Jankosky testified at trial, however, that appellant was not forceful during the encounter. Although he grabbed her arm at one point, she was quick to clarify that she believed he was trying to get her attention, not hurt her. And while appellant weighed around 260 pounds and was substantially larger than Jankosky, she testified that she was "not scared of him." She told the trial court that if she had wanted to get out of the vehicle, nothing would have stopped her from doing so.

Nevertheless, Jankosky also testified repeatedly that she felt compelled to remain in the car out of concern that "the situation would have escalated and become a lot worse." She testified that she did not want to risk a public confrontation that might have devolved into an exchange of blows:

> I sat in the vehicle and argued with him because if I got out, it would have escalated to a big scene. My son would have been in the middle. I would have hit him and he would have hit me so I chose to stay in that vehicle to try to keep it from not being a big ordeal or a big scene.

At the end of their argument, appellant grabbed Jankosky's phone and exited the car to call someone who had sent her a text message. Jankosky also left the vehicle, snatched her phone from appellant, and hit him. The two then left the parking lot separately. Jankosky

initially called 911 because she was concerned that the situation might have escalated later. She terminated the call, however, because she did not want appellant to see her speaking with the police. She reported the incident three months later.

During his bench trial, appellant moved to strike the evidence, arguing that Jankosky felt constrained "not . . . by force or . . . intimidation" but by her economic concerns and financial dependence. He renewed his motion during closing arguments, arguing that Jankosky was "hardly someone being intimidated and hardly someone afraid that force would be used against her."

In overruling the motion, the trial court indicated it would have granted the motion to strike had appellant not detained Jankosky in her own vehicle while their son was present. The court identified the intimidation as the choice between "being forced to sit in your own vehicle or get out and leave your own vehicle and abandon that with the child in it." The judge explained that "had it not been her vehicle," he would have "agree[d] with the defense 100 percent."

## II. ANALYSIS

After a bench trial, an appellate court may not set aside the judgment of the trial court "unless it appears from the evidence that such judgment is plainly wrong or without evidence to support it." Code § 8.01-680; Williams v. Commonwealth, 278 Va. 190, 193, 677 S.E.2d 280, 282 (2009). This Court reviews the evidence "in the light most favorable to the Commonwealth, as the prevailing party at trial, and considers all inferences fairly deducible from that evidence." Powell v. Commonwealth, 289 Va. 20, 26, 766 S.E.2d 736, 739 (2015) (quoting Allen v. Commonwealth, 287 Va. 68, 72, 752 S.E.2d 856, 858-59 (2014)). "[T]he relevant question is whether '*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" Williams, 278 Va. at 193, 677 S.E.2d at 282 (quoting Jackson v. Virginia, 443 U.S. 307, 319 (1979)).

Abduction is the unjustifiable "tak[ing], transport[ing], detain[ing] or secret[ing]" of another person by means of "force, intimidation or deception" with the specific intent "to deprive such other person of his personal liberty or to withhold or conceal him from any person, authority or institution lawfully entitled to his charge." Code § 18.2-47(A). In this case, the Commonwealth concedes that appellant used neither force nor deception to detain Jankosky. The dispositive question, therefore, is whether he detained her through intimidation.

In Virginia, intimidation has been defined as "putting a victim in fear of bodily harm by exercising such domination and control . . . as to . . . overbear her will." Sutton v. Commonwealth, 228 Va. 654, 663, 324 S.E.2d 665, 670 (1985).[1] Intimidation is distinct from threats in that it can occur without an overt "expression of an intention to do bodily harm." Id. Rather, the fear of bodily harm can arise from "the imposition of psychological pressure on one who, under the circumstances, is vulnerable and susceptible to such pressure." Id.

In this case, Jankosky's own testimony, viewed in its entirety, cannot support a reasonable inference that she was detained through intimidation. There is no evidence that she remained in her car because she feared appellant would harm her. Jankosky never claimed she was concerned that appellant might try to hurt her if she attempted to leave. Cf. Sabol v. Commonwealth, 37 Va. App. 9, 19, 553 S.E.2d 533, 538 (2001) (holding that no evidence in the record supported the finding that defendant intimidated the victim into sexual intercourse when the victim "never testified that she was actually in fear for her personal safety, only that she was

---

[1] Although Sutton dealt specifically with the meaning of "intimidation" in Virginia's rape statute, see 228 Va. at 662, 324 S.E.2d at 669, "[i]t is a common canon of statutory construction that when the legislature uses the same term in separate statutes, that term has the same meaning in each unless the General Assembly indicates to the contrary," Commonwealth v. Jackson, 276 Va. 184, 194, 661 S.E.2d 810, 814 (2008). Consequently, courts have relied on Sutton to define intimidation in a variety of contexts. See, e.g., Muhammad v. Commonwealth, 269 Va. 451, 498-99, 619 S.E.2d 16, 42-43 (2005) (applying Sutton for the definition of "intimidate" in a terrorism statute); Mojaher v. Commonwealth, 40 Va. App. 312, 322-23, 579 S.E.2d 359, 365-66 (2003) (en banc) (applying Sutton to animate object penetration); Harris v. Commonwealth, 3 Va. App. 519, 521-22, 351 S.E.2d 356, 356-57 (1986) (applying Sutton to robbery).

- 4 -

afraid of losing the lifestyle to which she had become accustomed"). Indeed, she expressly testified that she "was not scared of him" during their argument.

The closest Jankosky came to expressing any apprehension of bodily harm was her speculation that an escalating argument might have devolved into her initiation of a physical fight. The concern she expressed was not that she could have been injured but that such a public fight would be embarrassing. She testified that she "chose to stay in that vehicle to try to keep it from not being a big ordeal or a big scene." She also testified that she and appellant originally agreed to exchange custody of their son in public specifically to mitigate the likelihood of this sort of confrontation. Her concern about a potentially embarrassing public fight, however, does not amount to a fear of bodily harm that was induced by appellant's domination and that overbore her will.

The Commonwealth acknowledges that Jankosky testified she was unafraid of appellant. Nevertheless, the Commonwealth argues that a rational fact-finder could have discredited Jankosky's testimony based on speculation about a history of domestic violence between her and appellant. In principle, the Commonwealth is correct that prior domestic violence by the accused can support an inference of fear notwithstanding the victim's denial. A fact-finder need not accept a victim's testimony that she was unintimidated during her abduction if other evidence contradicts her testimony. Cf. Breeden v. Commonwealth, 43 Va. App. 169, 179-80, 596 S.E.2d 563, 568 (2004) (noting that a fact-finder was free to give little weight to the victim's claim that she was not threatened, forced, or intimidated into sex when other evidence impeached her testimony). And past instances of domestic violence by the accused can be probative of "the victim's state of mind as to why she did what she did." Morse v. Commonwealth, 17 Va. App. 627, 631-32, 440 S.E.2d 145, 148 (1994) (quotations omitted).

The difficulty in applying that principle to this case, however, is that Jankosky testified only about *her* willingness to use violence against him. She testified, for instance, that "numerous times" in the past she had "put [her] hands on Mr. Lunceford to stop him from doing something." She speculated that she might have initiated a physical fight if their argument escalated into a "big ordeal." She admitted hitting him towards the end of their argument but acknowledged that he did not hit her back. However, it is the *accused's* past acts of domestic violence that can circumstantially prove fear of bodily harm. In Sutton, for instance, the niece's fear of bodily harm was informed by having seen the Suttons use violence against each other and their son. 228 Va. at 660, 665, 324 S.E.2d at 668, 671. And in Cairns v. Commonwealth, 40 Va. App 271, 295, 579 S.E.2d 340, 351-52 (2003), this Court noted that a father's physical abuse of his stepson and his furniture-flipping outbursts informed his stepdaughter's fear of bodily harm when he raped her.

The Commonwealth contends that our standard of review requires that we infer any violence in appellant's relationship with Jankosky ran in both directions. We note, however, that inferences are reasonable only if they can be reached "without resorting to speculation or conjecture." McGuire v. Hodges, 273 Va. 199, 208, 639 S.E.2d 284, 289 (2007). And while Jankosky may have referred obliquely to prior assault and battery charges, we can only speculate as to the circumstances underlying those charges. Appellant apparently was never convicted on those charges; indeed, Jankosky did not say whether she was the victim, a witness, or even the accused. All we know for certain is that she exercised her Fifth Amendment right against self-incrimination in those cases.

Finally, the Commonwealth argued for the first time at oral argument that Jankosky might have stayed in her car because she feared appellant would harm her son. We presume that under certain circumstances, a defendant can abduct a parent by threatening to harm her child.

But the record here is insufficient to support the Commonwealth's speculation. Jankosky never testified that she feared appellant would harm their son. She also explained repeatedly that she remained in the car because she did not want to cause a scene, not because she feared appellant would become violent. Therefore, we find this contention without merit.

### III. CONCLUSION

Even in light of the applicable standard of review, and viewing the record in the light most favorable to the Commonwealth, we find the evidence insufficient to support appellant's conviction for abduction. Thus, we reverse appellant's conviction.

<u>Reversed and dismissed.</u>