COURT OF APPEALS OF VIRGINIA


Present:   Chief Judge Felton, Judges Frank and Kelsey
Argued at Salem, Virginia


MARK DOUGLAS ROADCAP

                                                                OPINION BY
v.              Record No. 2031-06-3                 JUDGE D. ARTHUR KELSEY
                                                              DECEMBER 18, 2007
COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF ROCKINGHAM COUNTY
James V. Lane, Judge

Peter R. Roane (Imhoff and Associates, on brief), for appellant.

Kathleen B. Martin, Senior Assistant Attorney General (Robert F.
McDonnell, Attorney General, on brief), for appellee.


A jury convicted Mark Douglas Roadcap of twelve charges of child sexual abuse that

included rape, object sexual penetration, abduction, and forcible sodomy.  The victim, his daughter,

was five and six years old when the abuse occurred.  On appeal, he claims the trial court

erroneously (a) excluded evidence of prior false accusations of sexual abuse and (b) violated both

his statutory and constitutional rights in the manner in which the victim testified at trial via two-way

closed-circuit television.  We disagree and affirm Roadcap's convictions.

I.

We recount the facts of this case only to the extent necessary to address Roadcap's

arguments on appeal.  In 2001, the victim and her twin brother lived with Roadcap and his wife.

The children were five years old.  They had lived previously with their biological mother and her

boyfriend.  A local department of social services ("DSS") removed the children because of drug

abuse by their mother and her boyfriend.  At that time, Roadcap and his wife also claimed the

victim had been sexually abused while in the care of the mother and boyfriend.  A sexual abuse

medical exam noted certain non-specific "adhesions" in the vaginal area but otherwise produced inconclusive findings.

DSS initially placed the children in Roadcap's custody but removed them in September 2001 because of his failure to appropriately supervise the children due to his alcohol addiction. The children spent several months in foster care and with relatives. In July 2002, DSS returned the children to Roadcap. About six weeks later, DSS again removed the children from Roadcap's home and placed them back in foster care because of his continued inability to care for the children.

In 2003, DSS placed the children with a prospective adoptive family and initiated parental termination proceedings. These proceedings culminated in a termination order against both Roadcap and the children's biological mother. A later adoption order placed both children with their new adoptive parents. During the adoption process, however, the victim had one final visit with Roadcap. She returned from that visit upset and experienced nightmares. When her adoptive mother inquired into what was wrong, the victim said Roadcap had sexually abused her when she was younger.

After taking the victim to a mental health counselor, the adoptive mother reported the child's complaints to the police. Investigators interviewed the victim and learned from her that Roadcap had raped and sexually assaulted her on multiple occasions. The child described two tattoos she said Roadcap had on his upper legs and one tattoo of a dog on his penis. Investigators also interviewed the victim's twin brother. The brother described in considerable, sordid detail specific instances of rape and abuse he observed.

Investigators confronted Roadcap with the allegations of the victim and her brother. After Roadcap denied the allegations, police obtained a search warrant to inspect Roadcap's body for tattoos. The inspection discovered that Roadcap had multiple tattoos, including two on his penis and one on his upper leg. The tattoos, however, did not match the exact description given by the

victim. A later sexual assault examination of the victim discovered an "abnormal" v-shaped scar on her vaginal opening. The examining nurse could not say with confidence a sexual assault caused the scar, but she added that the vaginal tissue heals quickly. The length of time between the alleged events and the 2005 examination, she explained, made the findings inconclusive.

At trial, the children testified by two-way closed-circuit television. Roadcap did not object generally to this mode of taking testimony. The children were in the same room as Roadcap's counsel and the Commonwealth's Attorney. Roadcap, however, remained in the courtroom with the judge and jury. Roadcap and the jury could see the children on the monitor as they testified. Roadcap's counsel did object, however, when the courtroom camera was directed away from Roadcap so the children could not view Roadcap personally. This omission, counsel argued, violated his rights under the Confrontation Clause of the Sixth Amendment. Noting the extensive testimony from mental health professionals presented at a pretrial hearing, the trial court denied Roadcap's request that the courtroom camera be trained on him.

During the trial, Roadcap's counsel sought to question witnesses about accusations of sexual abuse the victim and her brother made in 2001 against their biological mother and boyfriend (which Roadcap had reported to DSS), as well as a sexual abuse accusation in 2005 against an individual identified as "Uncle Peter." The trial court excluded this evidence over Roadcap's objection.

At trial, the children repeated their earlier descriptions of rape and sexual abuse by Roadcap. Roadcap testified in his own defense and protested his innocence. In closing argument, Roadcap's counsel pointed out the absence of any physical evidence and attacked the credibility of the victim and her brother. After an hour of deliberation, the jury convicted Roadcap of all charges and, upon hearing further evidence, sentenced him to ten life terms plus forty years.

Roadcap filed a motion to set aside the verdicts arguing the trial court erred in refusing to admit the prior accusations of sexual abuse. In a letter opinion, the trial court denied the motion on the ground that Roadcap failed at trial to proffer any basis for the court to make a "threshold determination that a reasonable probability of falsity exists," citing Clinebell v. Commonwealth, 235 Va. 319, 325, 368 S.E.2d 263, 266 (1988).

## II.

On appeal, Roadcap contests his convictions on two grounds. He first argues that the trial court erred in excluding his proffered evidence that the children had made prior sexual abuse accusations against their biological mother, her boyfriend, and an individual they identified as "Uncle Peter." Roadcap also claims the particular method used to take the victim's testimony via two-way closed-circuit television violated both Code § 18.2-67.9 and his confrontation clause rights under the Federal and Virginia Constitutions.

### A. EXCLUSION OF EVIDENCE OF PRIOR FALSE ACCUSATIONS

At trial, Roadcap claimed the victim and her brother made prior false accusations of sexual abuse against their biological mother and boyfriend, as well as by an individual identified only as "Uncle Peter." Appellant's Br. at 8, 10. Seeking to introduce these accusations into evidence, Roadcap said his "purpose was in fact to impeach witness credibility by demonstrating a pattern of false statements about sexual abuse, involving several persons." Id. at 9.

We agree in principle with Roadcap that a victim's prior *false* accusations of sexual abuse ordinarily may be admissible in defense to a later charge of sexual abuse. Under Virginia law, a defendant in a sex-crime case may "cross-examine his accuser about prior false accusations the accuser had made, but *only* where the court could make a threshold determination that there was a reasonable probability that the prior accusations were false." Clifford v. Commonwealth, 274 Va.

23, 24, 645 S.E.2d 295, 296-97 (2007) (citing Clinebell, 235 Va. at 325, 368 S.E.2d at 266 ) (emphasis added). Absent a "proper foundation" showing a reasonable probability of falsity, the impeachment evidence may not be admitted. Via v. Commonwealth, 42 Va. App. 164, 187-88, 590 S.E.2d 583, 594 (2004). The "focus is the falsity of the accusations" to ensure that the trial does not "stray from the central issue of the guilt or innocence of the defendant into a full-scale investigation of charges made by the [victim] against other persons. That would be intolerable." Little v. State, 413 N.E.2d 639, 643 (Ind. App. 1980) (cited in Clinebell, 235 Va. at 324, 368 S.E.2d at 265).

A mere assertion of falsity (even by the alleged prior abuser) does not lay a satisfactory foundation. Such an assertion is "inherently self-serving and does not, by itself, establish falsity." Richardson v. Commonwealth, 42 Va. App. 236, 241, 590 S.E.2d 618, 621 (2004). Unless the prior claims of sexual abuse are "patently untrue" on their face, Clinebell, 235 Va. at 325, 368 S.E.2d at 266 (dismissing as "obviously false" a claim by a prepubescent child that she was pregnant), the defendant must proffer evidence sufficient to persuade a trial court of a "reasonable probability that the victim's allegations were false," Richardson, 42 Va. App. at 242, 590 S.E.2d at 621.

Prior *truthful* accusations, after all, simply reveal the unfortunate, but irrelevant, fact that the alleged victim has been victimized before. They bolster — not impeach — a witnesses' credibility. See, e.g., State v. Sieler, 397 N.W.2d 89, 92 (S.D. 1986); State v. Kringstad, 353 N.W.2d 302, 311 (N.D. 1984). And prior statements that may or may not be truthful neither bolster nor impeach the witness and, thus, should be excluded as irrelevant. Otherwise, a "mini-trial" would take place "to determine if each incident actually occurred." State v. LeClair, 730 P.2d 609, 616 (Ore. App. 1986) (cited in Clinebell, 235 Va. at 325, 368 S.E.2d at 266).

In this case, Roadcap proffered no evidence demonstrating a reasonable probability of falsity. No evidence suggested the children's prior accusations against their biological mother and

her boyfriend were false. Just the opposite is true. Roadcap himself considered them true enough to make a contemporaneous report to DSS and to request an investigation into the accusations.

As for the prior accusations against an individual identified only as "Uncle Peter," Roadcap proffered no evidence at trial suggesting that these accusations were false.[1] Other than a statement by Roadcap's counsel questioning whether an "Uncle Peter" even existed (no witness or other evidence addressed the topic),[2] counsel offered nothing else for the trial court to make a threshold determination of falsity. The trial court, therefore, did not err in excluding the prior accusations of sexual abuse allegedly made by the victim and her brother against others.

B.   THE VICTIM'S TESTIMONY VIA CLOSED-CIRCUIT TELEVISION

Roadcap argues that the two-way closed-circuit testimony of the victim and her brother violated Code § 18.2-67.9 and his constitutional confrontation rights because the children, while on the witness stand, could not see Roadcap personally.

(i)  *Violation of Code § 18.2-67.9*

Roadcap conceded during oral argument on appeal that trial counsel did not make this statutory argument at trial. "As a precondition to appellate review, Rule 5A:18 requires a contemporaneous objection in the trial court to preserve the issue on appeal. Not just any objection

---

[1] In his post-trial briefs and arguments, Roadcap's counsel stated that he needed to amplify his position with additional points he had not specifically raised at trial. A litigant, however, cannot wait until *after* trial to present foundation evidence pertinent to a trial court's decision *during* trial to allow or exclude testimony. See Jones v. Commonwealth, 50 Va. App. 437, 445, 650 S.E.2d 859, 863 (2007) (agreeing that "post-trial motions regarding admission of evidence generally are not timely, especially after the jury has reached a verdict and been excused"); see also Boblett v. Commonwealth, 10 Va. App. 640, 650-51, 396 S.E.2d 131, 136-37 (1990). Rule 5A:18 requires both the objection and the "grounds therefor" to be made "at the time of the ruling."

[2] In his "Objections to Court's Letter Opinion Overruling Defendant's Motion to Set Aside the Verdict," Roadcap's counsel stated that two family members had testified at trial that they knew of no individual named "Uncle Peter." J.A. at 67. At the sentencing hearing, Roadcap's counsel stated that Roadcap and a family member also testified at trial that neither was aware of any "Uncle Peter" in the children's lives. We have read the trial transcripts and found no such testimony.

will do.  It must be both *specific* and *timely* — so that the trial judge would know the particular point being made in time to do something about it."  Thomas v. Commonwealth, 44 Va. App. 741, 750, 607 S.E.2d 738, 742 (emphasis in original), adopted upon reh'g en banc, 45 Va. App. 811, 613 S.E.2d 870 (2005).  For this reason, we will not address whether the trial court's approved method of two-way closed-circuit testimony violated Code § 18.2-67.9.[3]

(ii) *Roadcap's Confrontation Clause Rights*

Roadcap also argues the trial court violated his federal and state confrontation clause rights by refusing to train the camera on him while his children were on the witness stand.  Roadcap acknowledges that Maryland v. Craig, 497 U.S. 836 (1990), authorizes even greater limitations in the context of child witness testimony in cases involving sex crimes.  To be sure, Craig approved *one-way* closed-circuit television testimony where the child witness could not see anyone or anything in the courtroom, much less the accused.  Id. at 851-52; see Johnson v. Commonwealth, 40 Va. App. 605, 615, 580 S.E.2d 486, 491 (2003).[4]  It necessarily follows that the two-way closed-circuit method used in Roadcap's case, despite the witnesses' inability to see Roadcap, does not violate his confrontation clause rights.

Roadcap nonetheless suggests we "make new law" (his expression) by reexamining the underlying logic of Craig in light of newer, but distinguishable, decisions like Crawford v.

---

[3] "Although Rule 5A:18 allows exceptions for good cause or to meet the ends of justice, appellant does not argue that we should invoke these exceptions."  Logan v. Commonwealth, 50 Va. App. 518, 651 S.E.2d 403, 407 (2007) (citation omitted).  "We will not consider such an argument *sua sponte*."  Id. (citing Edwards v. Commonwealth, 41 Va. App. 752, 761, 589 S.E.2d 444, 448 (2003) (*en banc*)).

[4] In addition to a requisite finding of necessity, Craig requires the trial court meet "three further requirements:  (1) the finding of necessity must be case-specific; (2) the child must be 'traumatized, not by the courtroom generally, but by the presence of the defendant'; and (3) the emotional distress suffered by the child witness must be more than 'mere nervousness or excitement or reluctance to testify.'"  Johnson, 40 Va. App. at 613, 580 S.E.2d at 490 (citation omitted).  "All three requirements are embodied in Code § 18.2-67.9."  Id.  Roadcap does not challenge the trial court's decision on any of these grounds.

Washington, 541 U.S. 36 (2004) — which he claims recognizes a more robust application of confrontation clause rights. We decline the invitation. As nearly all courts and commentators have agreed, Crawford did not overrule Craig.[5] Whether it could have or should have, we do not say, and it is not our place to predict whether any of Crawford's progeny will do so. "When a precedent of the Supreme Court has direct application in a case, we are not at liberty to ignore that precedent in favor of other Supreme Court decisions employing a similar analysis in a different factual and legal context." Johnson v. Commonwealth, 267 Va. 53, 76, 591 S.E.2d 47, 60 (2004) (citation omitted). Lower courts must "follow the case which directly controls," leaving to the Supreme Court the sole "prerogative of overruling its own decisions." Id. (citation omitted); see also United States v. Hatter, 532 U.S. 557, 567 (2001); State Oil Co. v. Khan, 522 U.S. 3, 20 (1997) (stating "it is this Court's prerogative alone to overrule one of its precedents"). The holding as well as the *ratio decidendi* of Craig, therefore, stands as binding authority.

Finally, Roadcap asks us to construe the Virginia Constitution to afford broader confrontation rights than the Federal Constitution. In that broader construct, Roadcap reasons, we should require not only two-way closed-circuit testimony in child sex cases (not compulsory under Craig but legislatively mandated by Code § 18.2-67.9), but also condition its constitutionality upon the further requirement that the courtroom camera be trained on the accused. Once again, we decline Roadcap's invitation to depart from settled precedent. "The corresponding provisions of the Virginia Constitution go no further than their federal counterparts." Lilly v. Commonwealth, 50 Va. App. 173, 184, 647 S.E.2d 517, 522 (2007). "We have 'consistently held that the protections afforded under the Virginia Constitution are co-extensive with those in the United States

---

[5] See United States v. Yates, 438 F.3d 1307, 1313-15 (11th Cir. 2006) (*en banc*); United States v. Kappell, 418 F.3d 550, 554-55 (6th Cir. 2005); State v. Blanchette, 143 P.3d 19, 28-29 (Kan. App. 2006); State v. Henriod, 131 P.3d 232, 238 (Utah 2006); State v. Griffin, 202 S.W.3d 670, 680-81 (Mo. App. 2006).

Constitution.'"  Id. (quoting <u>Rowley v. Commonwealth</u>, 48 Va. App. 181, 187 n.2, 629 S.E.2d 188, 191 n.2 (2006)).  Our analysis of this issue, therefore, proceeds down one, not two, constitutional tracks.

III.

The trial court did not err in excluding evidence of prior accusations of sexual abuse.  We also conclude that the particular two-way closed-circuit protocol adopted by the trial court did not violate Roadcap's constitutional confrontation rights.  His convictions for rape, object sexual penetration, abduction, and forcible sodomy are affirmed.

<u>Affirmed.</u>