COURT OF APPEALS OF VIRGINIA

Present:   Judges Beales, Chafin and Senior Judge Bumgardner
Argued at Chesapeake, Virginia


TERRY LEE POFF, S/K/A
  TERRY LEE POFF, JR.
                                                    MEMORANDUM OPINION[*] BY
v.        Record No. 0911-15-1                      JUDGE RANDOLPH A. BEALES
                                                    JANUARY 24, 2017
COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF THE CITY OF NORFOLK
Junius P. Fulton, III, Judge

James O. Broccoletti (Randall J. Leeman, Jr.; Zoby, Broccoletti &
Normile, P.C., on brief), for appellant.

Eugene Murphy, Senior Assistant Attorney General (Mark R.
Herring, Attorney General, on brief), for appellee.


Terry Lee Poff ("appellant") was indicted for and convicted in a jury trial of one count of

taking indecent liberties with a minor while in a custodial or supervisory role in violation of Code

§ 18.2-370.1 and one count of forcible sodomy in violation of Code § 18.2-67.1.[1]  On appeal, we

consider whether the trial court abused its discretion in refusing to admit witness testimony about an

alleged prior false accusation previously made by the alleged victim in this case.

---

[*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

[1] Appellant was also charged with one count of rape in violation of Code § 18.2-61 and one
count of abduction with intent to defile in violation of Code § 18.2-48, but the jury acquitted him of
both of these charges.

I. Background

The alleged victim, K.A.,[2] is the daughter of appellant's live-in girlfriend. At the time of the alleged offense, K.A. was fifteen years old. In the early morning hours of January 23, 2014, as appellant and K.A. sat in the living room alone together, appellant told K.A. that he had a scar on his penis and offered to show her. She testified that, although she said that she did not want to see it, he pulled down his pants and asked her to touch his penis because "I can only show you if my penis is hard." When she said she did not want to touch his penis, he said, "Just do it." K.A. testified that he then told her to "give [him] a blow job." K.A. testified that, after she said no, he said, "Why? It's clean." K.A. also testified that appellant then told her to stop and lie down. When she laid down, he told her to remove her pants. When she eventually complied, she testified that he proceeded to have vaginal intercourse with her. After five to six minutes, appellant told her, "[W]e should stop before your mom wakes up. Put your pants back on." He allowed her to go to her room, and she locked herself in her room and called her grandmother. She then slipped out of her house and met her grandmother at a nearby 7-Eleven. The grandmother alerted K.A.'s father, who came and took K.A. to the hospital for examination. K.A. told police and the sexual assault nurse examiner (SANE) that she had been assaulted.

The police collected DNA evidence from appellant around 2:00 p.m. on January 23, 2014. Don Cunnius, a forensic scientist with the Virginia Department of Forensic Science, examined the swabs taken from appellant's genitals and underwear for DNA. Mr. Cunnius testified before the jury that he was "able to develop a [DNA] profile from [appellant's ] pubic area swabs, as well as the inner fly area of the underpants." Mr. Cunnius testified, "[K.A.]

---

[2] We use initials for two of the witnesses, who are minors, K.A. and A.H., in an effort to try to better protect their privacy.

cannot be eliminated as a contributor of this foreign profile." It was more than 1.3 quadrillion times more likely to be DNA from K.A. than anyone else.

When K.A. testified, she was cross-examined by appellant's trial counsel regarding a "prior false accusation" made to her friend, A.H.

> [Appellant's Attorney:] You ever made any comments to [A.H.] about having been raped, three men tied you to a tree and raped you?
> [K.A.:] That I never said to her.
> [Attorney:] You deny telling her that?
> [K.A.:] I deny telling her that.
> [Attorney:] You made comments to her about having been raped by a person named Panda?
> [K.A.:] Is his name Michael?
> [Attorney:] Yes.
> [K.A.:] Yes.
> [Attorney:] So you told her you were raped by another person?
> [K.A.:] Sure.
> [Attorney:] Sure?
> [K.A.:] Yes.
> [Attorney:] Did you tell her that was a falsehood?
> [K.A.:] What?
> [Attorney:] Did you tell the young lady, [A.H.] –
> [K.A.:] That it never happened?
> [Attorney:] Yeah.
> [K.A.:] At the time she was my best friend, and when I told her, I was joking around.
> [Attorney:] You were joking around?
> [K.A.:] Yes.
> [Attorney:] All a big joke to you?
> [K.A.:] No.

During appellant's case-in-chief, appellant's counsel sought to have A.H. testify as A.H. had been K.A.'s best friend. Appellant's counsel asked the trial court to allow A.H. to testify because

> on direct examination and cross examination of the victim in this – alleged victim in this case, I asked her if she ever told [A.H.] about the fact that she had been tied to a tree and raped by three men. She said no, she had not. [A.H.], I believe, will testify to the effect, in fact, [K.A.] did tell her that, and [K.A.] said that was a lie, not true.

A.H. gave testimony under oath before the trial court but outside of the presence of the jury. A.H. testified that K.A. "was my best friend. She lived a couple blocks away from me." A.H. also testified to the following:

> [Appellant's Attorney:] Was there ever a conversation initiated by [K.A.] with regard to a rape scenario regarding three men?
> [A.H.:] Yes.
> [Attorney:] Could you tell the judge what the conversation was?
> [A.H.:] She called me one day, and she told me that she had just been raped, and she said that she was riding her dirt bike and three men came up to her and they tied her up to a tree, and then she said she, like, blacked out and she woke up in a bed, and then she called her girlfriend to come get her.
> [Attorney:] And approximately when did this conversation take place?
> [A.H.:] A couple years ago.
> [Attorney:] And you're sure it was [K.A.] who made the conversation call to you?
> [A.H.:] Yes.
> [Attorney:] And after that conversation, was there any other conversation between you and [K.A.] regarding this incident?
> [A.H.:] Yes. About in, like, last December, we were talking about another boy she had had sex with, and then I brought up the three-guys incident, and then she said that she had just been joking about it.

The trial court said, "Just so the record is clear, the issues that counsel and the Court have to deal with is whether or not under the circumstance of this case where the defense claims that the victim made a false allegation of rape and then acknowledged the falsity of that allegation should come in."

Appellant's trial counsel made his position clear by stating, "It was my position, Judge, that it was an issue of credibility. It's not an issue that comes under the rape shield law." The trial court ultimately sustained the Commonwealth's objection and did not permit A.H. to testify. The trial court determined that no principle of law permits the use of extrinsic evidence to attack the credibility of a witness and ruled A.H.'s testimony was therefore inadmissible. The trial

- 4 -

court focused on Clinebell v. Commonwealth, 235 Va. 319, 368 S.E.2d 263 (1988), and found

that the testimony was not permitted under Virginia's rape shield statute. The trial court stated:

> [I]t should be noted that [K.A.] denies ever making that statement
> to the witness who just testified, [A.H.]. And also, the subsequent
> statement attributed to [K.A.] by the witness [A.H.] admitting that
> the past sexual assault did not take place, that's also denied by
> [K.A.]. Given the weight of the evidence in Clinebell and the
> other cases that the counsel and the court has brought up in our
> discussions on this matter, I'm going to note your exception to the
> court's ruling and deny the opportunity for her to testify.

Ultimately, the jury found appellant guilty of forcible sodomy and taking indecent

liberties with a minor while in a custodial or supervisory role, but acquitted appellant of rape and

of abduction with intent to defile.

## II. ANALYSIS

### A. Standard of Review

"We review a circuit court's decision to admit or exclude evidence under an abuse of

discretion standard and, on appeal, will not disturb a circuit court's decision to admit evidence

absent a finding of abuse of that discretion." Herndon v. Commonwealth, 280 Va. 138, 143, 694

S.E.2d 618, 620 (2010). However, this Court reviews questions of law, such as questions of

statutory construction and issues of constitutional law, *de novo*.

### B. Prior False Accusations: Proper Impeachment Evidence?

Appellant raises the following assignment of error:

> The trial court erred and abused its discretion by not allowing the
> defendant to introduce relevant testimony concerning the alleged
> victim's prior false allegation of rape. The trial court's ruling that
> such testimony was inadmissible extrinsic evidence deprived the
> defendant of the opportunity to provide evidence that was vital to
> his defense.

On appeal, appellant argues, "[A.H.], who was an unbiased witness and who was

described by both herself and [K.A.] as [K.A.'s] best friend, proffered testimony that was in

direct contradiction to [K.A.'s] denial of the second false allegation of rape." Pet. for App. at 16. As such, appellant argues that A.H. should have been allowed to testify in order to impeach K.A.'s credibility.

### 1. Prior False Accusation Not Protected by the Rape Shield Statute

The Commonwealth argues that A.H.'s testimony about a prior false accusation was governed by the rape shield statute and that appellant was not allowed to offer A.H.'s testimony to the jury because appellant did not seek a hearing pursuant to the rape shield statute. As a threshold matter, A.H.'s testimony about a false accusation of rape cannot fall under Code § 18.2-67.7 (sometimes referred to as the "rape shield statute") because it is not testimony about her past sexual activity but an alleged lie that she told about alleged sexual activity. K.A. never asserted at trial that the "three-person rape" was *true*, but simply claimed that she never told such a story to A.H. In Clinebell v. Commonwealth, 235 Va. 319, 368 S.E.2d 263 (1988), the Supreme Court explained, "[Appellant] seeks to prove for impeachment purposes that his daughter makes false statements concerning sexual behavior. We conclude that such statements are not 'conduct' within the meaning of Code § 18.2-67.7 [the rape shield statute], and therefore, the section is inapplicable." Id. at 323, 368 S.E.2d at 264. Similarly, we conclude here in this case that a false statement, such as this one about the "gang rape," is not conduct under Code § 18.2-67.7.

### 2. Cross-Examination and Impeachment of Witnesses in Prosecution for Sexual Offenses

Generally, "a witness' character may not be impeached by showing specific acts of untruthfulness or bad conduct." Id. at 324, 368 S.E.2d at 265. However, "[a]t least in the context of prosecutions of sexual offenses, evidentiary constraints must sometimes yield to a defendant's right of cross-examination." Id. at 325, 368 S.E.2d at 266. "Calling for evidence in one's favor is central to the proper functioning of the criminal justice system. It is designed to

ensure that the defendant in a criminal case will not be unduly shackled in his effort to develop his best defense." Cairns v. Commonwealth, 40 Va. App. 271, 284, 579 S.E.2d 340, 346 (2003) (quoting Clark v. Commonwealth, 31 Va. App. 96, 109, 521 S.E.2d 313, 319 (1999)) (internal citations omitted). "Consequently, in a sex crime case, the complaining witness may be cross-examined about prior false accusations, and if the witness denies making the statements, the defense may submit proof of such charges." Clinebell, 235 Va. at 325, 368 S.E.2d at 266; see also Virginia Rule of Evidence 2:608(e) ("Except as otherwise provided by other evidentiary principles, statutes or Rules of Court, a complaining witness in a sexual assault case may be cross-examined about prior false accusations of sexual misconduct.").

### 3. Evidence of a Prior False Accusation

Appellant cross-examined K.A. by asking her whether she had ever told A.H. that three men raped her and then later admitted to A.H. that the story was fabricated. Counsel asked this series of questions without objection from the Commonwealth. After K.A. denied making this false accusation, appellant sought to put on testimony from A.H. that would contradict K.A.'s testimony and impeach her in appellant's case-in-chief.

"Unless the prior claims of sexual abuse are 'patently untrue' on their face, the defendant must proffer evidence sufficient to persuade a trial court of a 'reasonable probability that the victim's allegations were false.'" Roadcap v. Commonwealth, 50 Va. App. 732, 740, 653 S.E.2d 620, 624 (2007) (internal citations omitted). The trial court apparently made a determination that there was not a reasonable probability that K.A. had made this prior false accusation to A.H. The trial court specifically found:

> [I]t should be noted that [K.A.] denies ever making that statement to the witness who just testified, [A.H.]. And also, the subsequent statement attributed to [K.A.] by the witness [A.H.] admitting that the past sexual assault did not take place, that's also denied by [K.A.]. Given the weight of the evidence in Clinebell and the

other cases that the counsel and the court has brought up in our discussions on this matter, I'm going to note your exception to the court's ruling and deny the opportunity for her to testify.

Thus, it is apparent from the record that the trial court weighed K.A.'s and A.H.'s testimony and determined that A.H.'s testimony would not be admitted. The trial court, however, was not tasked with weighing *all* of the evidence in the case to determine which witness should be believed before deciding whether to admit A.H.'s testimony. While it is true that we afford the trial court great deference in determining questions of admissibility generally, the trial court erred in substituting its judgment for that of the jury as factfinder when it excluded A.H.'s testimony rather than allowing the jury to weigh A.H.'s testimony with all of the other evidence.

Cases like Roadcap and Richardson v. Commonwealth, 42 Va. App. 236, 590 S.E.2d 618 (2004), (on which the Commonwealth relies) are very different from the instant case because they involve a proposed impeachment witness who had *himself* previously been accused of sexual assault by the alleged victim. See Roadcap, 50 Va. App. 732, 653 S.E.2d 620; see also Richardson, 42 Va. App. 236, 590 S.E.2d 618 (finding that the trial court did not abuse its discretion when it denied "prior false accusation" testimony from a former accused denying that he previously sexually assaulted the alleged victim). Certainly, testimony from individuals like the proffered impeachment witnesses in Roadcap and in Richardson cannot, standing alone, "lay a satisfactory foundation" because such testimony is "inherently self-serving and does not, by itself, establish falsity." Roadcap, 50 Va. App. at 740, 653 S.E.2d at 624 (quoting Richardson, 42 Va. App. at 241, 590 S.E.2d at 621). However, in this case, A.H. was a third party witness. A.H. was a girl who knew K.A. well and whom K.A. trusted to exchange confidences (evidenced by the fact that the two acknowledged they had been best friends). In addition, K.A. *admitted* at trial to making a *different* false accusation to A.H. in which she had once claimed to have been raped by Michael ("Panda"). Thus, "we are of the opinion that [appellant] had a right to confront

[K.A.] with the extrajudicial statements she allegedly made to disinterested persons." Clinebell, 235 Va. at 325, 368 S.E.2d at 266. Consequently, we hold that the trial court abused its discretion in failing to allow A.H. to testify in this case about this alleged prior false accusation of sexual assault.[3]

### 4. Constitutional Harmless Error

"Because '[c]ross-examination is an absolute right guaranteed to a defendant by the confrontation clause of the Sixth Amendment and is fundamental to the truth-finding process,' any error in improperly restricting cross-examination is an error of constitutional magnitude." Clifford v. Commonwealth, 48 Va. App. 499, 511, 633 S.E.2d 178, 183 (2006) (quoting Clinebell, 235 Va. at 325, 368 S.E.2d at 266), rev'd on other grounds, 274 Va. 23, 645 S.E.2d 295 (2007);; see also Delaware v. van Asdall, 475 U.S. 673 (1986) ("[T]he constitutionally improper denial of a defendant's opportunity to impeach a witness . . . is subject to Chapman harmless-error analysis. The correct inquiry is whether, assuming that the damaging potential of the cross-examination were fully realized, a reviewing court might nonetheless say that the error was harmless beyond a reasonable doubt.").

"When a federal constitutional error is involved, a reversal is required unless the reviewing court determines that the error is harmless beyond a reasonable doubt. The reviewing court must determine 'whether there is a reasonable possibility that the evidence complained of might have contributed to the conviction.'" Pitt v. Commonwealth, 260 Va. 692, 695, 539 S.E.2d 77, 78 (2000) (quoting Chapman v. California, 386 U.S. 18, 23 (1967) (internal citation omitted)). See also Cairns, 40 Va. App. at 286, 579 S.E.2d at 347 ("We must reverse a criminal

---

[3] We do not opine on *all* of the particulars of A.H.'s testimony before the trial court. A.H. also testified that K.A. had engaged in previous sexual relationships with another individual – testimony which seemingly is precluded by the rape shield statute (Code § 18.2-67.7).

conviction unless it plainly appears from the record and the evidence given at the trial that the error did not affect the verdict.").

In this case, the jury convicted appellant of one count of forcible sodomy and one count of taking indecent liberties with a minor over whom he had a supervisory relationship.

Regarding the charge of forcible sodomy, the Commonwealth's theory of the case was that appellant penetrated the mouth of K.A. with his penis against her will by force, threat, or intimidation. See Code § 18.2-67.1.[4] K.A.'s DNA recovered from appellant's genitals and the inner fly of his underpants makes it abundantly clear that physical contact between appellant and K.A. occurred. However, K.A.'s testimony is the only evidence that shows that appellant's penis made contact with her mouth – or that the act was performed against her will by force, threat, or intimidation.[5] Therefore, because K.A. provided essential testimony about those required elements of forcible sodomy and the Commonwealth's case for forcible sodomy was not overwhelming without K.A.'s testimony, there is a reasonable possibility that the trial court's decision not to admit A.H.'s testimony impeaching K.A.'s credibility contributed to appellant's conviction for forcible sodomy. Accordingly, we cannot say that the error in excluding A.H.'s testimony about K.A.'s additional prior false accusation of rape was harmless beyond a

---

[4] Code § 18.2-67.1 states in pertinent part:

> An accused shall be guilty of forcible sodomy if he or she engages in cunnilingus, fellatio, anilingus, or anal intercourse with a complaining witness whether or not his or her spouse . . . and 1. *The complaining witness is less than 13 years of age*; or 2. The act is accomplished *against the will by force, threat or intimidation* of or against the complaining witness or another person . . . .

[5] Given that K.A. was thirteen or older on the day in question (she was actually fifteen years old), the statute requires that it be proved that the act was performed against her will by force, threat, or intimidation.

- 10 -

reasonable doubt.  Consequently, we must reverse the conviction for forcible sodomy and remand for a new trial if the Commonwealth be so advised.

On the charge of taking indecent liberties with a minor with whom appellant had a supervisory relationship, however, we *can* conclude beyond a reasonable doubt that there was not a reasonable probability that the exclusion of the impeachment evidence of A.H.'s testimony contributed to appellant's conviction on that charge.  Pursuant to Code § 18.2-370.1(iii) and the instruction to the jury in this case, the Commonwealth was required to prove that appellant "with lascivious intent, knowingly and intentionally" exposed his "sexual or genital parts" to K.A., that K.A. was under the age of eighteen, that appellant was eighteen years of age or older, and that appellant maintained a custodial or supervisory relationship with K.A.  See Code § 18.2-370.1(iii) and Jury Instruction No. 12. [6]  In short, while K.A.'s testimony was the sole source of evidence in support of the element of force, threat, or intimidation for the forcible sodomy conviction, the Commonwealth's other evidence in support of the indecent liberties charge was

---

[6]  Jury Instruction No. 12 details the legal requirement found in Code § 18.2-370.1(iii). Code § 18.2-370.1 states:

> Any person 18 years of age or older who . . . maintains a custodial or supervisory relationship over a child under the age of 18 and is not legally married to such child and such child is not emancipated who, with lascivious intent, knowingly and intentionally (i) proposes that any such child feel or fondle the sexual or genital parts of such person or that such person feel or handle the sexual or genital parts of the child; or (ii) proposes to such child the performance of an act of sexual intercourse, anal intercourse, cunnilingus, fellatio, or anilingus or any act constituting an offense under § 18.2-361; or (iii) exposes his or her sexual or genital parts to such child; or (iv) proposes that any such child expose his or her sexual or genital parts to such person; or (v) proposes to the child that the child engage in sexual intercourse, sodomy or fondling of sexual or genital parts with another person; or (vi) sexually abuses the child as defined in subdivision 6 of § 18.2-67.10 is guilty of a Class 6 felony.

- 11 -

overwhelming.  See Pitt, 260 Va. at 695, 539 S.E.2d at 78 (the overall strength of the prosecution's case and the presence of corroborating evidence are proper factors for consideration).

It was clearly established that appellant was well over the age of eighteen at the time of the offense, that K.A. was fifteen at the time of the offense, and that appellant – by virtue of his relationship with K.A.'s mother and the fact that he lived in the same house as both K.A. and her mother – was in a supervisory role over K.A.  A foreign DNA profile (DNA from a person other than appellant) was collected from swabs of appellant's genitals and his underpants.  That foreign DNA profile was examined and found to match the DNA profile of K.A., such that K.A. could not be eliminated as the contributor of that foreign profile and such that it was actually more than 1.3 quadrillion times more likely to be DNA from K.A. than anyone else.  While it is true that K.A.'s testimony *added to* the DNA evidence when she testified that appellant exposed his penis to her, the forensic evidence of K.A.'s DNA on appellant's genitals and on the inner fly of his underpants overwhelmingly established that he exposed his penis to K.A. for her to touch.  In light of the strength of the forensic evidence produced by the Commonwealth, the fact that the evidence is undisputed that K.A. was only fifteen while appellant was forty-one, and the undisputed fact that appellant was in a supervisory relationship with K.A. as her mother's boyfriend who lived with them, we find that the error in excluding evidence of K.A.'s prior false accusations to A.H. was harmless beyond a reasonable doubt regarding the indecent liberties charge.  A.H.'s testimony could not *reasonably* have affected the jury's determination.  Accordingly, we affirm that conviction, given the elements of this statute and all of the evidence that clearly satisfies them.

III. CONCLUSION

In summary, we hold that the trial court erred in refusing to allow the jury to hear impeachment evidence in the form of A.H.'s testimony that contradicted some of K.A.'s testimony.  Despite this error, we can conclude beyond a reasonable doubt that A.H.'s testimony

- 12 -

would not have affected the jury's determination with regard to the charge of taking indecent liberties, given the elements of that statute, given that K.A.'s DNA was found on appellant's genitals, given that appellant's age and K.A.'s age both met the requirements of Code § 18.2-370.1, and given appellant's supervisory relationship with K.A. in their home – all of which evidence was undisputed on appeal. However, because we cannot determine beyond a reasonable doubt that A.H.'s testimony would not have affected the verdict on the charge of forcible sodomy, given how important K.A.'s testimony and her credibility were to the necessary elements for any conviction of forcible sodomy, we must reverse appellant's conviction for forcible sodomy and remand the case to the circuit court for a new trial if the Commonwealth be so advised.

Affirmed in part, reversed and remanded in part.