COURT OF APPEALS OF VIRGINIA

Present:   Judges Beales, O'Brien and Russell
Argued by videoconference

SHARON E. ROBERTSON

                                                    MEMORANDUM OPINION[*] BY
v.        Record No. 0232-21-4                      JUDGE RANDOLPH A. BEALES
                                                    JANUARY 25, 2022
RICKY WES LOY

FROM THE CIRCUIT COURT OF STAFFORD COUNTY
Victoria A.B. Willis, Judge

Norman A. Thomas (Mark B. Michelsen; Player B. Michelsen;
Norman A. Thomas, PLLC; Stiles Ewing Powers, on briefs), for
appellant.

E. Stanley Murphy (Dunton, Simmons & Dunton, LLP, on brief), for
appellee.


Sharon E. Robertson and Ricky Wes Loy were divorced by a final decree of divorce in

the Circuit Court of Stafford County on February 26, 2021.  The parties requested that the circuit

court interpret sections of the premarital agreement that they had signed prior to their marriage.

Robertson and Loy disputed the meaning of the premarital agreement's provisions concerning

the disposition of certain real property (known as the "BMW Property") and the distribution of

the marital property upon divorce.  In this appeal, Robertson challenges the circuit court's

interpretation of those two provisions of the premarital agreement.

I. BACKGROUND

Robertson and Loy were married on March 3, 2016 after working closely together and

also living together since 2011.  Prior to the marriage, on February 18, 2016, Robertson and Loy

[*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

signed a premarital agreement, which included provisions that covered the parties' rights with respect to "Marital Property," "Separate Property," and "BMW Property." During the marriage, Loy and Robertson owned a marital residence at 417 Chamonix Drive in Stafford County that is also at issue on appeal.

Robertson owns BMW Property LLC, which holds a mixed commercial and residential building located at 145 Harrell Road in Stafford County and a parcel of approximately five acres of land in Westmoreland County, Virginia (collectively "The BMW Property"). Prior to the marriage, Loy owned a construction company that developed and built the property at 145 Harrell Road. Before her marriage to Loy, Robertson served as the Chief Financial Officer for both Loy's construction company and BMW Property LLC. In 2014, Robertson agreed to purchase from Loy the 145 Harrell Road property through BMW Property LLC at an "auction on the courthouse steps" prior to the marriage and prior to the execution of the premarital agreement. On June 23, 2016, after Robertson and Loy were married and after both parties signed the premarital agreement, Robertson refinanced the 145 Harrell Road Property for $1.3 million.

On March 9, 2019, Loy notified Robertson in writing of his intent to divorce. In this written notice, Loy wrote that, regarding the BMW Property, "I plan to purchase the apartment building according to the prenuptial so I need all the information and documentation to start the loan process along with a signed sales contract." Loy also stated, "It is in the agreement that it is our 'intent' for me to own the property at 145 Harrell road and that 'both parties will work together to make this happen with the final result that Rick has 100% ownership.' Therefore, you are not to encumber the building in any manner." Loy's written notice refers to Article II, Paragraph 3(c) ("Paragraph 3(c)") of the premarital agreement, which states in full:

SHARON and RICK's intention is, in the case of divorce, for the real property held by BMW Property LLC to be transferred to RICK, and for SHARON to be reimbursed $350,000.[1] Because of the need to refinance the property to take SHARON off the debt and take out the $350,000 to pay SHARON, the parties recognize that this contemplated transfer will not be immediate or automatic. It will be dependent on RICK's ability to refinance the property. Both parties will work together to make this happen, with the final result being that RICK has 100% ownership of the real properties owned by BMW Property LLC (which would entail SHARON removing the properties from the LLC and transferring the properties to RICK, with SHARON keeping full ownership of the BMW Property LLC entity), and SHARON has $350,000 cash and no liability for any of the debt on the real properties. If the transaction as describe[d] in this subparagraph is not possible, even given the full cooperation of both parties, then the transaction will not occur. The parties agree that this provision will be null and void if, 24 months after either party evokes this clause (by a dated writing to the other, including by email with receipt acknowledged, or the start of contacting banks to obtain refinancing), RICK has been unable to obtain a loan.

From April 16, 2019, to June 11, 2020, after Robertson received Loy's written notice, Robertson took out five deeds of trust on the 145 Harrell Road property. She asserted that these deeds of trust were necessary to cover costs for the property, including repairs of decks, storm water maintenance, and bio-retention issues.[2] In addition, she took out a sixth deed of trust, which she claimed was necessary to reimburse her for the purchase of the Westmoreland County property in 2011.[3] In sum, the total of these deeds of trust equated to an additional debt of

---

[1] Regarding this dollar amount, the trial court stated, "SHARON asserts the $350,000 referenced in the Agreement was to reimburse her for the costs associated with the purchase of the Harrell Road property."

[2] Robertson also asserted that she took out these deeds of trust to reimburse her for expenses that she had previously paid on the 145 Harrell Road property with her own money. However, the trial court found, "It was unclear to the court why SHARON having sole control over the account and reconciling on a monthly basis, had not been reimbursed for a number of the expenses now claimed."

[3] The Westmoreland County property was purchased in 2011 – well prior to the marriage. The trial court found that Robertson had already been reimbursed by Loy for the Westmoreland property by his giving Robertson a check for the exact amount of the purchase price of the property at the time of the transaction in 2011. The trial court concluded that "it was not credible

$546,169.19 on the BMW Property – beyond the debt already on the BMW Property as of March 9, 2019.

Because Robertson recorded these deeds of trust after Loy's written notice to her of his intent to divorce, the parties disagreed as to whether Paragraph 3(c) of the premarital agreement required Loy to assume the debt incurred from these deeds of trust. The parties noted that Paragraph 3(c) states that it is the parties' intention, "in the case of divorce, for the real property held by BMW Property LLC to be transferred to RICK" and that Paragraph 3(c) recognizes the need to "take SHARON off the debt" in order for Loy to acquire complete ownership of the BMW Property. Loy contended that Paragraph 3(c) obligated him only for the debt accrued as of February 18, 2016 – the date of execution of the premarital agreement. Robertson argued that the debt should be calculated as of the date of divorce, which was February 26, 2021.

The trial court, however, disagreed with both Loy and Robertson. In interpreting the premarital agreement, the trial court looked to the concluding sentence of Paragraph 3(c), which reads, "The parties agree that this provision will be null and void if, 24 months after either party *evokes this clause* (by a dated writing to the other, including by email with receipt acknowledged, or the start of contacting banks to obtain refinancing), RICK has been unable to obtain a loan." (Emphasis added). In an opinion letter dated February 16, 2021, the trial court concluded that Paragraph 3(c) allows either party to invoke that section in writing to begin the process of transferring the BMW Property to Loy in the event of divorce. The trial court concluded that Loy did so when he sent written notice to Robertson of his intent to divorce her and referred to Paragraph 3(c) in that notice. Therefore, regarding Paragraph 3(c)'s recognition

that RICK would owe her for some other reason the exact amount of the purchase price down to the penny - $24,642.68. Plaintiff Exhibit 20. Thus, the deposit to her account from RICK supports RICK's assertion that SHARON was paid for the purchase of the Westmoreland property."

- 4 -

of the need to "take SHARON off the debt" in order to transfer the BMW Property to Loy, the trial court ruled that the "debt" would be calculated as of March 9, 2019 – the date Loy sent written notice of his intent to divorce and of his intent to begin the transfer described in Paragraph 3(c) of the premarital agreement.

As a result, in the final divorce decree, the trial court ordered "that the debt on the Harrell Road property is set at the refinanced amount of $1.2 million and the Deeds of Trust (1 through 5) taken by Defendant [Robertson] subsequent to receipt of the written notice are not valid and must be removed from all BMW property prior to transfer to Plaintiff [Loy]." In addition, the trial court ordered that the sixth deed of trust (which was associated with the Westmoreland property) must also be removed.[4] Although Robertson presented evidence that the specific amount of debt owed on the BMW Property as of March 9, 2019 was $1,218,758 – rather than an even $1,200,000, the trial court decided that the debt should be set at $1.2 million.

In addition, there was a dispute over the marital residence at 417 Chamonix Drive. At trial, Loy offered to purchase the home for $700,000. The parties had discussed this matter but had not reached a decision. The trial court did not make a ruling from the bench. Instead, the trial court in a subsequent opinion letter dated February 17, 2021, concluded, "During four days of testimony the only evidence produced was that LOY made an offer to buy the marital home. If SHARON does not wish to accept, the parties will be required to sell the home and divide the proceeds equally." In the final divorce decree, the trial court stated that the court declined to value the residence at $700,000, but it ordered "that if Defendant [Robertson] does not wish to

---

[4] The trial court also found that there was "no debt associated" with the Westmoreland County property on the date, March 9, 2019, that Loy sent his written notice to Robertson.

accept Plaintiff's [Loy's] offer to buy the property for $700,000, then it shall be listed for sale and the[y] divide the proceeds equally."

Robertson now appeals the trial court's rulings to this Court.

## II. ANALYSIS

Robertson appeals both the trial court's ruling on Paragraph 3(c) relating to the BMW Property and the trial court's ruling on the marital property. Her first five assignments of error focus on the BMW Property, and her sixth assignment of error addresses the marital home.

Robertson's assignments of error require this Court to interpret the parties' premarital agreement. Premarital agreements "are contracts subject to the rules of construction applicable to contracts generally, including the application of the plain meaning of unambiguous contractual terms." *Pysell v. Keck*, 263 Va. 457, 460 (2002). This Court is bound by the Supreme Court caselaw that states that "where an agreement is complete on its face, is plain and unambiguous in its terms, the court is not at liberty to search for its meaning beyond the instrument itself." *Waynesboro Village, L.L.C. v. BMC Properties*, 255 Va. 75, 79 (1998) (quoting *Berry v. Klinger*, 225 Va. 201, 208 (1983)). Furthermore, "[a] contract is not deemed ambiguous merely because the parties disagree as to the meaning of the language they used to express their agreement." *Ross v. Craw*, 231 Va. 206, 212-13 (1986). "In reviewing the agreement, we must gather the intent of the parties and the meaning of the language, if we can, from an examination of the entire instrument, giving full effect to the words the parties actually used." *Layne v. Henderson*, 232 Va. 332, 337-38 (1986). Finally, "courts cannot read into contracts language which will add to or take away from the meaning of the words already contained therein." *Southerland v. Estate of Southerland*, 249 Va. 584, 590 (1995) (quoting *Wilson v. Holyfield*, 227 Va. 184, 187 (1984)).

## A. The BMW Property

For these first five assignments of error, the relevant provisions of the premarital agreement are as follows:

> 3. Upon Divorce of Parties.
>
> (a) Separate Property. In the event that the parties' marriage is terminated by divorce, except as otherwise provided, all Separate Property shall be and remain forever the Separate Property of the party so owning and acquiring it, free and clear of all rights, claims and interests of the other party, free and clear of any authority in any court to order a conveyance, partition, division or transfer of any part of it, or a monetary award based upon it, without regard to whether the acquisition of any of such Separate Property, increases in its value or income received from it is attributable to the personal efforts of either party, except as set forth herein. Each party forever waives, relinquishes and renounces, and each party releases the other party from any and all claims that any of the other party's Separate Property is Marital Property, notwithstanding that in the absence of this Agreement part of all of such property may otherwise have been classified as Marital Property under the laws of any governing jurisdiction.
>
> (b) Marital Property. Except as provided herein, in the event the parties' marriage is terminated by divorce, the parties agree all Marital Property which is jointly owned or jointly titled as of the Separation Date shall be evenly divided between the parties.
>
> (c) BMW Property. SHARON and RICK's intention is, in the case of divorce, for the real property held by BMW Property LLC to be transferred to RICK, and for SHARON to be reimbursed $350,000. Because of the need to refinance the property to take SHARON off the debt and take out the $350,000 to pay SHARON, the parties recognize that this contemplated transfer will not be immediate or automatic. It will be dependent on RICK's ability to refinance the property. Both parties will work together to make this happen, with the final result being that RICK has 100% ownership of the real properties owned by BMW Property LLC (which would entail SHARON removing the properties from the LLC and transferring the properties to RICK, with SHARON keeping full ownership of the BMW Property LLC entity), and SHARON has $350,000 cash and no liability for any of the debt on the real properties. If the transaction as describe[d] in this subparagraph is not possible, even given the full cooperation of both parties, then the transaction will not occur. The parties agree that this provision will be null and void

if, 24 months after either party evokes this clause (by a dated writing to the other, including by email with receipt acknowledged, or the start of contacting banks to obtain refinancing), RICK has been unable to obtain a loan.

1. The Date of the Determination of the Debt (Assignment of Error One)

For her first assignment of error, Robertson contends that "[t]he Trial Court erred in finding that the date of determination of the debt on BMW Property, LLC's real estate properties was March 9, 2019, the date Husband delivered written notice to Wife of his intent to divorce." Robertson argues that the trial court "wrote-in new terms that nowhere exist in the Premarital Agreement" when deciding on the March 9, 2019 date. Instead, Robertson continues to maintain the date of the debt determination under Paragraph 3(c) must be the date of the actual termination of the marriage by divorce based upon the paragraph's use of the language "in the case of divorce."

A plain reading of the last sentence of Paragraph 3(c) demonstrates, however, that the parties intended to allow for the described transfer of the BMW Property to begin on a date other than the date of divorce. The last sentence of Paragraph 3(c) states that "[t]he parties agree that this provision will be null and void if, 24 months after either party evokes this clause (by a dated writing to the other, including by email with receipt acknowledged, or the start of contacting banks to obtain refinancing), RICK has been unable to obtain a loan." This language clearly expresses the parties' intent to allow for either party to invoke Paragraph 3(c) "by a dated writing to the other" in order to initiate the transfer of the property. Furthermore, this language demonstrates that the date of the writing invoking Paragraph 3(c) is a crucial factor for determining the date for calculating the debt because Paragraph 3(c) is expressly conditioned on Loy's ability to obtain a loan within twenty-four months of that writing. Otherwise, Paragraph 3(c) becomes "null and void." Likewise, the concluding language of Paragraph 3(c) allows for

the transfer process to initiate when either of the parties starts the process of contacting banks to pursue refinancing of the BMW Property so that Loy can obtain a loan within twenty-four months of contacting the banks. Therefore, the plain language of Paragraph 3(c) permits either party to invoke this provision of the premarital agreement on a date other than the date of the divorce.

In this case, Loy notified Robertson in writing on March 9, 2019, that "I plan to purchase the apartment building according to the prenuptial so I need all the information and documentation to start the loan process along with a signed sales contract." The notice clearly triggers the concluding sentence of Paragraph 3(c). Loy sent a dated writing to Robertson indicating his intent to divorce her and his intent to pursue the transfer of the BMW Property to him according to the terms of Paragraph 3(c) of the premarital agreement.[5] The clock then starts for Loy to obtain a loan within twenty-four months of invoking this clause. Consequently, this Court holds that the trial court correctly determined that March 9, 2019, is the correct date for calculating the debt on the BMW Property.[6]

---

[5] The parties do not dispute that Robertson received Loy's written notice on March 9, 2019. In her amended answer to Loy's complaint for divorce, Robertson stated that "Defendant admits that she received written notice from Plaintiff on March 9, 2019."

[6] The determination that March 9, 2019, is the proper date for calculating the amount of debt is also harmonious with the additional language in Paragraph 3(c) regarding how the transfer of the BMW Property will actually occur. Paragraph 3(c) also states, "the parties recognize that this contemplated transfer will not be immediate or automatic. It will be dependent on RICK's ability to refinance the property. *Both parties will work together to make this happen*." (Emphasis added). In addition, that paragraph further states, "If the transaction as describe[d] in this subparagraph is not possible, even *given the full cooperation of both parties*, then the transaction will not occur." (Emphasis added). This language clearly requires that both Robertson and Loy have an affirmative obligation toward each other to bring about the transfer of the BMW Property to Loy in exchange for the removal of the debt. Once Loy triggers the provisions in Paragraph 3(c), the parties must cooperate until the transfer is complete or does not occur. Allowing for a party to unilaterally assign additional debt to the BMW Property after the other party invokes the clause would violate the language requiring the parties to work together to bring this transaction to fruition.

In short, the trial court did not err in determining that March 9, 2019, was the appropriate day for calculating the amount of debt that Loy must assume from Robertson in order to acquire the BMW Property pursuant to Paragraph 3(c) of the premarital agreement. Therefore, this Court affirms the trial court's ruling that March 9, 2019, was the appropriate date for calculating the debt of the BMW Property.

### 2. Reformation of the Premarital Agreement (Assignment of Error Two)

For her second assignment of error, Robertson argues that "[t]he Trial Court erred by reforming Article II, subparagraph 3 of the Parties' Premarital Agreement." However, Rule 5A:18 bars Robertson from actually even raising this argument to this Court for the first time on appeal.

The Supreme Court has stated that "[a] basic principle of appellate review is that . . . arguments made for the first time on appeal will not be considered." *Martin v. Ziherl*, 269 Va. 35, 39 (2005). "As a precondition to appellate review, Rule 5A:18 requires a contemporaneous objection in the trial court to preserve the issue on appeal. Not just any objection will do. It must be both *specific* and *timely*—so that the trial judge would know the particular point being made in time to do something about it." *Bass v. Commonwealth*, 70 Va. App. 522, 538 (2019) (quoting *Roadcap v. Commonwealth*, 50 Va. App. 732, 741 (2007) (emphasis in original)). Furthermore, "an appellate court's review of the case is limited to the record on appeal." *Wilkins v. Commonwealth*, 64 Va. App. 711, 717 (2015).

Here, the record reflects that Robertson failed to argue to the trial court that it reformed the premarital agreement. Nothing in the record demonstrates that Robertson raised an argument to the trial court that it reformed the premarital agreement when it interpreted the contract. Furthermore, Robertson does not ask for an exception "for good cause shown or to enable this Court to attain the ends of justice." *See* Rule 5A:18. Consequently, Robertson's failure to raise

the argument about reformation to the trial court bars her from appellate review under Rule 5A:18 of her second assignment of error.

### 3. The Classification of the Property (Assignment of Error Three)

For her third assignment of error, Robertson argues that "[t]he Trial Court erred in finding that the BMW property under subparagraph 3(c) was a deviation from the definitional provisions of 'separate property' in the Parties' Premarital Agreement." Robertson contends that, because she purchased the BMW Property before the marriage, the property should be considered her own separate property. Therefore, Robertson asserts that the trial court erred in classifying the BMW Property as "a carve out or an exception" to the separate property provision of the premarital agreement.

Article II, Section 3 of the premarital agreement splits the couple's property into three classifications – "Separate Property," "Marital Property," and "BMW Property." The separation of the couple's property into distinct classifications of "Separate Property," "Marital Property," and "BMW Property" clearly demonstrates that the "BMW Property" should be considered as its own unique classification that is not encompassed by the "Separate Property" or "Marital Property" provisions of the premarital agreement. As the Supreme Court has stated, "Courts cannot read into contracts language which will add to or take away from the meaning of the words already contained therein." *Wilson*, 227 Va. at 188. Because the premarital agreement contains three separate sections relating to property ("Separate Property," "Marital Property," and "BMW Property"), the trial court certainly did not err in considering the BMW Property to be "a carve out or an exception" to the "Separate Property" or "Marital Property" clauses.

### 4. The Six Deeds of Trust (Assignment of Error Four)

For her fourth assignment of error, Robertson contends that "[t]he Trial Court abused its discretion in finding that Wife must remove deeds of trust numbers one through six on her BMW

properties prior to transferring them to Husband." Robertson asserts "that the trial court abused its discretion to order the Deeds of Trust 'invalid,' in light of its determination [] that March 9, 2019, constituted the determination date for 'the debt.'"

As noted *supra*, the trial court did not err in deciding that the date for calculating the debt on the BMW Property should be March 9, 2019. At issue on appeal are the six deeds of trust added to the BMW Property after that date by Robertson. Deed of Trust 1, Deed of Trust 2, and Deed of Trust 6 were added to the property on April 16, 2019. Deed of Trust 3 was added to the property on April 25, 2019. Deed of Trust 4 was added to the property on February 12, 2020. Finally, Deed of Trust 5 was added to the property on June 11, 2020.

The Supreme Court has ruled that "we review de novo the purely legal issues of what the terms of a contract are, and how those terms apply to the facts of the case." *CGI Federal Inc. v. FCI Federal, Inc.*, 295 Va. 506, 519 (2018) (quoting *Spectra-4, LLP v. Uniwest Commer. Realty, Inc.*, 290 Va. 36, 43 (2015)). Having decided that March 9, 2019 is the correct date for calculating the debt on the BMW Property and in applying terms of the premarital agreement to the facts of this case, we cannot say that the trial court abused its discretion in requiring Robertson to remove the six deeds of trust on the BMW Property before transferring the property to Loy. Because March 9, 2019, has been determined to be the date of calculating the debt, requiring Loy to take on this additional debt after March 9, 2019 – when Loy had invoked Paragraph 3(c) in writing – would contradict the terms of the premarital agreement that gives both parties an affirmative obligation to see that this transaction occurs. In addition, requiring Loy to take on this debt, such as Deed of Trust 5 which was added to the property on June 11, 2020 (well over a year after Loy triggered the provision), interferes with Loy's ability to obtain a loan within twenty-four months of invoking the provision. The clear purpose of this provision in

the premarital agreement is for Loy to know the exact amount of the debt that he must take over so that he can obtain a loan to finance the transaction.

Consequently, this Court cannot say that the trial court erred by requiring Robertson to remove the six deeds of trust before transferring the property to Loy.

### 5. Definition of the Debt and Its Amount (Assignment of Error Five)

For her fifth assignment of error, Robertson argues that "[t]he Trial Court erred in finding that the term 'The Debt' in Article II Subparagraph 3(c) of the parties' premarital agreement was not specifically defined and therefore needed to be determined by the court." As discussed *supra*, we have upheld the ruling of the trial court that interpreted the premarital agreement and determined the date of the debt on the BMW Property to be March 9, 2019 because that is the date that Loy gave written notice to Robertson that he planned to divorce her and also planned to pursue the transfer of the BMW Property to him. Therefore, this Court will not disturb the trial court's ruling that Loy must remove only the debt on the property as of March 9, 2019 – not the additional debt that Robertson added to the property after March 9, 2019.

While the trial court was correct in the interpretation of the premarital agreement, the trial court was not correct in concluding that "the debt on the Harrell Road property is set at the refinanced amount of $1.2 million." During the proceedings in the trial court, Robertson presented Defendant's Exhibit 35, entitled "Summary of Debt," which showed the amount of the refinanced debt on that property as of March 9, 2019, as $1,218,758. The trial court ultimately decided to set the debt at an even $1.2 million. However, the evidence in the record simply does not support that number. To the contrary, Robertson presented evidence that the debt amounted to $1,218,758. At oral argument before this Court, Loy's counsel acknowledged that $1,218,758 was the proper amount for the debt on March 9, 2019. Therefore, while this Court concludes that the trial court properly interpreted the premarital agreement with respect to the date of

determination of the debt, the trial court was plainly wrong in calculating the precise amount of the debt. Consequently, this Court reverses the trial court's ruling on the amount of the debt and remands to the trial court on that issue so that it can set the amount of the debt on March 9, 2019 at $1,218,758 – instead of $1,200,000.

### B. The Marital Home (Assignment of Error Six)

Lastly, Robertson's sixth assignment of error focuses on the marital home located at 417 Chamonix Drive in Stafford County. Robertson contends that "[t]he Trial Court erred by ordering the marital residence to be sold if Wife refused to sell the residence to Husband." In the final divorce decree, the trial court stated that the court "declines to value the residence at $700,000 but is ORDERED that if Defendant does not wish to accept Plaintiff's offer to buy the property for $700,000, then it shall be listed for sale and the[y] divide the proceeds equally." Robertson contends that the trial "court lacked the authority to order Wife to list the property for sale if she declined Husband's purchase offer."

Regarding the disposition of marital property upon divorce, the premarital agreement states, "Except as provided herein, in the event the parties' marriage is terminated by divorce, the parties agree all Marital Property which is jointly owned or jointly titled as of the Separation Date *shall be evenly divided between the parties*." (Emphasis added). The premarital agreement thus expressly states that marital property must be evenly divided between the parties. Because Robertson and Loy failed to reach a mutual agreement as to the disposition or division of the marital home, the terms of the premarital agreement certainly envision and allow for the trial court to order a sale of the marital home if that is necessary to accomplish an even division of that marital asset, which is apparently the only marital property to be divided here. Therefore, the trial court did not err in deciding that the marital home would need to be sold if the parties could not decide among themselves how to handle the marital home – and, consequently, in

ordering that the net proceeds from the sale of the home (after paying off any liens) "be evenly divided between the parties" according to the plain language of the premarital agreement.

## III. CONCLUSION

In short, the premarital agreement signed between Robertson and Loy contained specific provisions for how to distribute both the marital property and the BMW Property upon the divorce of the parties. Regarding the couple's marital home, the premarital agreement requires that all marital property "shall be evenly divided between the parties." The only marital property now at issue in this appeal is the marital home, and the parties failed to agree on its disposition and on how to fulfill the terms of the premarital agreement. The trial court, therefore, ordered that, if the parties could not decide among themselves about the disposition of the marital home, the home "shall be listed for sale" and the parties would then "divide the proceeds equally." This order from the trial court is harmonious with the premarital agreement, and, therefore, this Court upholds the trial court's ruling that the marital home be sold and the net proceeds from the sale of the home – after paying off any liens – be divided evenly between the two former spouses.

Regarding the BMW Property, Loy notified Robertson in writing on March 9, 2019, about his desire to divorce her and also about his intention to invoke the language of the premarital agreement so that he could initiate the transfer of the BMW Property from Robertson to Loy. The premarital agreement gives specific instructions about how to fulfill this transfer. Loy would need to take on all of the debt from Robertson that had accrued on the property on the notification triggering date and also pay her $350,000 pursuant to the premarital agreement. The premarital agreement also requires the parties to work together – with each having an affirmative obligation to make sure that this transaction can occur. The parties are required to cooperate so that Loy can obtain a loan within twenty-four months of the date of triggering the provision on the BMW Property.

Based upon the language of the parties' premarital agreement, this Court upholds the trial court's ruling that March 9, 2019 is the proper date for calculating the amount of debt on the BMW Property because that is the date Loy notified Robertson in writing of his intent to pursue the transfer of the property, pursuant to the premarital agreement. This Court also upholds the trial court's decision that the premarital agreement intended for the BMW Property to be "a carve out or an exception" from the premarital agreement's section on "Separate Property" based upon the premarital agreement's separate classifications and specific and distinct requirements for how to distribute the BMW Property if the parties divorced. Furthermore, the trial court did not err in ruling that Robertson must remove the six deeds of trust on the BMW Property because all six were placed on the property *after* Loy triggered the provision of the premarital agreement to begin the transfer of the BMW Property to him.

Although the trial court did not err in determining the correct date (March 9, 2019) for calculating the debt under the premarital agreement, the trial court was plainly wrong in calculating the correct amount of debt on the BMW Property as of March 9, 2019. The record in this case clearly supports Robertson's argument that the correct amount of the debt is $1,218,758, instead of just a flat $1.2 million, and Loy's counsel furthermore acknowledged at oral argument before this Court that the trial court's debt calculation was incorrect. The premarital agreement requires Loy to pay Robertson $350,000 – and to incur responsibility for all of the debts of the BMW Property as of March 9, 2019. We consequently reverse the ruling of the trial court only to the extent that it must correct the amount of debt on the BMW Property on March 9, 2019 to be $1,218,758.

Therefore, for all of these reasons, we generally affirm the decision of the trial court, except that we reverse the ruling of the trial court as to the *amount* of the debt on the BMW

Property, and we remand to the trial court to correct the amount of debt on the BMW Property as of March 9, 2019 – and for any other necessary proceedings consistent with this opinion.[7]

*Affirmed in part and reversed and remanded in part.*

---

[7] Robertson recently filed two motions with this Court shortly before oral argument. She filed an "Emergency Motion for Temporary Stay of Enforcement and for Certiorari to Enlarge the Record." She also filed a "Motion for Review and Modification of Trial Court's Suspension Bond Ruling." Given that this Court has decided the merits of Robertson's case and given that the matter is now remanded back to the trial court, we deny both motions.